Jerry Glen PRICHARD and Charles D.
PRICHARD *v.* STATE of Arkansas

CR 75-20                                523 S.W. 2d 194

Opinion delivered May 19, 1975

*James E. Davis*, for appellants.

*Jim Guy Tucker*, Atty. Gen., by: *Robert A. Newcomb*, Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. A church building in Texarkana was burglarized and two units of speaking equipment valued at $88 each were taken therefrom along with other items. The appellants were brothers who lived with their parents, Mr. and Mrs. Frank Prichard, about four blocks from the church. The Prichard home was searched under a search warrant and the stolen property was found. The appellants admitted the burglary and their admissions and also the stolen property were introduced into evidence at their trial before the circuit court sitting as a jury on the charges of burglary and grand larceny. They were both found guilty and Jerry Glen was sentenced to five years in the penitentiary on each count to

run concurrently but suspended during good behavior. Charles was sentenced to five years on each count to run concurrently, four years of which was suspended during good behavior.

On appeal to this court the appellants question the admissibility of evidence obtained under an invalid search warrant because the warrant did not particularly describe the place to be searched. The search warrant and the affidavit upon which it was based described the premises as follows:

"Res. of Holland Prichard 1st House North of Euclid on west side white frame with green shutters also two storage houses behind and any vehicle on premises. . . ."

At the hearing on motion to quash, the appellant Charles Prichard testified that he and his brother lived with their parents at 1617 Prospect in the city of Texarkana. He said that they were buying the property and had lived there about six months. He said the house was not identified in any way that a stranger would know that the Prichard family lived in it. He said that the name on the mailbox in front of the house was "Strachan." On cross-examination Mr. Prichard testified as follows:

"Q. Mr. Prichard, if you were going to tell a friend who had never been over to your home at that particular residence how to get there, and what to look for when they got there, how would you describe it?

A. On to the house?

Q. Yes.

A. I just tell them to turn off Euclid onto Prospect, and it's the second house upon the hill on the left.

Q. Would it be a fair direction to say the first house north of Euclid on the west side of the street?

A. Yes, sir.

Q. And would it further be fair to say that it is a white frame house with green shutters on it?

A. Yes, sir, but there's two—

Q. In other words, if you were going to tell your girl friend to come see you, or a boyfriend, or whoever, and they hadn't been over there before, you would have told them that, and that would be a fair description of how to get to your house, and to know which house you lived in when they got there, is that right?

A. Yes, sir.

Q. How many storage building, or outhouses, are on the premises over there?

A. Two.

Q. What are they, garages, or houses, or what?

A. There's a house right behind ours, and a little storage house."

Mr. Prichard said there was another white house with green shutters on the street but their house was the only one that had two storage buildings behind it.

On redirect examination Mr. Prichard explained the discrepancy as to the first and second house by stating that there actually was one other house on the same side of Prospect between his house and Euclid, but that the other house faced on Euclid.

The officers serving the search warrant testified that they had no difficulty locating the Prichard house under the description in the search warrant.

In the statement Charles Prichard gave to the officers he said the church building was about four blocks from their home; that he and his brother had heard about the speakers that were in the church building; that they went to the

church building at night, found the door locked but a window unlocked; that they went through the window, unplugged the loudspeakers and carried them to their home and hid them. He said that other items found in the home and offered in evidence were brought to the house by his brother, Jerry Glen, who told him he had obtained the articles from another boy.

The appellants argue on appeal that according to the evidence the residence searched was in no way identified as the residence of Holland Prichard; that the residence was actually at 1617 Prospect in Texarkana; that Euclid is an east-west street approximately ten blocks long; that it is intersected by one major highway and approximately eight other streets beside Prospect Street. They argue that there is a white frame house with green shutters directly next door to the house searched; that the residence searched was being purchased by Frank Prichard, and that the name on the mailbox in front of the house was not "Prichard, but Strachan." The appellants argue that the proper description in the search warrant should have been "turn off Euclid on to Prospect and it is the second house on the left." They argue that the officers making the search had never been to the house before or had the house under surveillance; that since the residence was urban property and had an identifiable address, that it could be easily confused with any one of the first houses which would be the first house on the west, north of Euclid on any of the other streets which intersect Euclid Street. The appellants contend that the facts in this case bring it within the purview of *Perez* v. *State*, 249 Ark. 1111, 463 S.W. 2d 394 (1971), rather than our earlier case of *Easley* v. *State*, 249 Ark. 405, 459 S.W. 2d 410 (1970).

The appellants overlook Prichard's own testimony that his home is actually the first house on the left after turning off of Euclid Street onto Prospect, as the other white house with green shutters was on the corner and faces on Euclid rather than Prospect. He also testified that his house was the only white house with green shutters with two storage houses in back. There was no evidence of other white houses with green shutters on other streets in the area north of Euclid, and no evidence of any other house in the area occupied by a person

named "Prichard." There was no evidence of any other white frame house with green shutters and two storage houses behind it on the north side of Euclid Street in its entire length. As a matter of fact Prichard testified that there was no such other house in the area and the officer who served the warrant and made the search, said he had no difficulty locating the house under the description in the warrant. We are of the opinion, therefore, that this case falls within the purview of *Easley* v. *State, supra*, rather than the *Perez* case.

We do not deem it necessary to set out in detail the distinction between the *Perez* and *Easley* cases except to say that the search warrant in *Perez* directed the searching officers to an apartment occupied by Jack Eaton at the "Curl Street Apartments at Curl and Washington Streets and in a black Ford Thunderbird, Kentucky License Number B67-413, and a red Volkswagen, Kentucky License Number M6-801, at said address in the City of Hot Springs, County of Garland, State of Arkansas." There was no Jack Eaton occupying an apartment in the building but Perez appeared in the properly described automobile and his apartment, one of seven in the building, was searched.

The search warrant in *Easley* directed the officers to search a house "occupied by Bud Easley in or near Hiwasse in the County of Benton." In that case, as in the case at bar, the officers had no difficulty in locating the house to be searched. It is true that in *Easley* the property was rural property but regardless of whether the property is rural or urban, a search warrant is directed to the officers charged with the responsibility of making the search; and the description should be specific enough to enable the officers to identify the person or premises to be searched and, at the same time, protect the person or property searched against unintended and unreasonable searches and seizures.

In *Steele* v. *United States*, 267 U.S. 498 (1925), the United States Supreme Court set out the test as to specific description required in search warrants under the Fourth Amendment as follows:

"It is enough if the description is such that the officer

with a search warrant, can, with reasonable effort, ascertain and identify the place intended."

In *State v. Daniels*, 46 N.J. 428, 217 A. 2d 610 (1966), a store, described in the search warrant as a confectionary store, was erroneously stated to be at 31 Avon Place rather than at 35 Avon Place. In that case the New Jersey Supreme Court said:

"The test is not whether the description is completely accurate in every detail but rather whether it furnishes a sufficient basis for identification of the property so that it is recognizable from other adjoining and neighboring properties. *United States v. Pisano*, 191 F. Supp. 861 (S.D. N.Y. 1961).

We must therefore analyze the facts in the matter *sub judice* to ascertain whether the search warrant complied with the basic tenet set forth in *Steele, supra*. This subject must be approached on a common sense basis rather than upon a super technical basis requiring elaborate specificity."

The appellants seem to contend that the burden was on the state to show that no comparable residences to that of the appellants existed on any of the other intersecting streets north of Euclid Street. The state seems to contend that the burden was on the appellants to show the possibility of another house or houses that could be confused with the one described in the warrant. We are inclined to agree with the state. In *United States v. Joseph*, 174 F. Supp. 539 (E.D. Pa. 1959), the address of the building searched was 209 Minersville Street, but the warrants used identified the premises as 209 Court Terrace and 523 Minersville Street. In finding the warrant description to meet constitutional re-quirements, the court said:

"In any case, if defendant is seriously taking the position that the address is or was insufficient, his argument is doomed to failure by the settled rule that all that is re-quired is that the description suffice to enable officers to ascertain and identify the place intended by reasonable

effort. *Steele* v. *United States*, 267 U.S. 498 (1925); *United States* v. *Klaia*, 127 F. 2d 529 (2nd Cir. 1942).

No showing was made that there was any adjoining building likely to be confused with the Joseph premises, regardless of which address or which entrance was specified."

In *Johnson* v. *State*, 469 S.W. 2d 581 (Tex. Cr. App. 1971), the court said:

"In another ground of error, appellant complains that there was a variance between the premises described in the search warrant and the premises actually searched. The warrant designates 872 Bettina Street. The proof shows that the apartment searched was located at 872 Bettina Court. Reliance is had upon *Balch* v. *State*, 134 Tex. Cr. R. 237, 115 S.W. 2d 676. In *Balch* it was made apparent that the address designated in the warrant was a vacant lot. No such fact exists in this case. There is no showing that there were two streets named Bettina in Houston and therefore, *Balch* supra, is not controlling."

In *Owens* v. *Scafati*, 273 F. Supp. 428 (D. Mass. 1967), the petitioner sought a writ of habeas corpus on the ground that his conviction resulted from evidence seized under a search warrant which did not particularly describe the place to be searched. In approving the warrant the court said:

"With regard to the contention that the search warrant failed to describe the premises with particularity, * * * there was no showing at any stage of the State court proceedings, and there has been no showing to date, that 1 Thomas Park appeared to be a multiple unit dwelling. The State court record indicates, to the contrary, that there was only one door from the outside, which opened into a hallway which gave access to the entire house. There has been no showing that the police officers knew or should have known from its physical appearance that 1 Thomas Park was a multiple dwelling house when they applied for the warrants, there has been no showing that the officers knew or should have

known that anyone other than the Owens brothers lived therein, and there has been a showing that the officers did know that the Owens lived at 1 Thomas Park."

At 79 C.J.S., Searches and Seizures, § 98, the following general proposition is set forth:

"One who seeks affirmative relief on the ground that officers violated his constitutional rights in making a search has the burden of establishing facts from which it will affirmatively appear that his rights were invaded."

In *State* v. *Holt*, 415 S.W. 2d 761 (Mo. 1967), the accused was convicted of possessing an apparatus for the unauthorized use of narcotic drugs. The appellant sought reversal because, *inter alia*, the search which resulted in the seizure of certain articles was unreasonable and void and that the evidence so taken should have been suppressed. In denying this contention the Supreme Court of Missouri said:

"Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions. (Cases cited). Not only is the legality of a seizure properly determined by a motion to suppress the evidence but the burden is on the defendant to offer evidence and affirmatively demonstrate the illegality of the search and seizure."

Thus, the burden of proof, in the sense of producing evidence, is clearly on the defendant who alleges that the warrant is unconstitutional.

In *State* v. *Gailes*, 428 S.W. 2d 555 (Mo. 1968), the defendant was convicted of illegal possession of a stimulant drug. Though this case is not exactly on point because the search was one without a warrant, the general rule was set out by the court as follows:

"Defendant was not denied but on the contrary was given every opportunity to establish the unlawfulness of the search and of the arrest of defendant, but simply failed to sustain the burden which rests upon a defendant to

'affirmatively demonstrate the illegality of the search and seizure.' *State* v. *Medley*, Mo. Sup., 400 S.W. 2d 87."

In *State* v. *Bailey*, 23 Conn. Sup. 405, 184 A. 2d 61 (1962), the defendant appealed on the sole ground that the court erred in denying his motion to suppress or strike the evidence from the record because the state failed to introduce the search warrant as part of its case. In holding that the state was not required to put the warrant into evidence the Connecticut Court said:

" 'Various documents or instruments issued by authority of law and approved by the courts or public officers are presumed to have been regularly issued. This is true as to search warrants * * *.' 1 Wharton, Criminal Evidence (11th Ed.) § 160, p. 176; 47 Am. Jur. 521, § 31. 'The burden rests upon the defendant to prove the invalidity of the search warrant.' Wharton, op. cit. § 197, p. 219."

In *People* v. *Wilson*, 256 C.A. 2d 411, 64 Cal. Rptr. 172 (1967), a defendant, who was convicted of unlawfully possessing heroin for sale, alleged error, *inter alia*, because at the evidentiary hearing the magistrate held the burden to be on the defendant to go forward in contesting the warrant and that each side produce the witnesses they wanted. The California Court of Appeals for the Second District dismissed this argument saying:

"It has been held that the burden of establishing the invalidity of a search warrant is upon the defendant. *Williams* v. *Justice Court*, 230 Cal. App. 2d 87, 40 Cal. Rptr. 724 (1964)."

See also, *People* v. *Carson*, 4 Cal. App. 3d 782, 84 Cal. Rptr. 699 (1970).

In *State* v. *Rangel*, 12 Ariz. App. 172, 468 P. 2d 623 (1970), a defendant convicted of possession of heroin contended that the search warrant used to acquire the damaging evidence was invalid. The court held that in order to determine the validity of the warrant, it must view the affidavit presented to the magistrate and any sworn testimony given

him. The record contained neither the affidavit nor any testimony before the magistrate. The Court of Appeals of Arizona, Division 1, said:

"While we may sympathize with the defendant's allegation, we are compelled to overrule any objections he may have as to the insufficiency of the warrant as the burden is upon him to so prove and the record imports verity."

We conclude that the description of the premises to be searched in the case at bar was sufficiently accurate and specific to enable the officers to find it without confusion or difficulty, and that the burden rested on the appellants to offer proof to the contrary.

The judgments are affirmed.

BYRD, J., concurs.