Billy Ray JOHNSON *v.* STATE of Arkansas

CA CR 93-497                              876 S.W.2d 607

Court of Appeals of Arkansas
En Banc
Supplemental Opinion on Denial of Rehearing June 1, 1994

*James R. Marschewski*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clementine Infante*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. By opinion filed March 2, 1994, we reversed the conviction of Billy Ray Johnson for the crime of possession of methamphetamine with intent to deliver. This decision resulted from our determination that appellant's motion to suppress evidence seized in his arrest and search should have been granted. The state has now petitioned for rehearing, which we deny.

This case does not involve a challenge to the reliability of a known informant. At issue is the credibility of an anonymous tipster.

At the suppression hearing, Officer Terry Grizzle of the Ft. Smith Police Department testified that a secretary at the police station received an anonymous telephone call. The caller said that "Billy Ray [appellant] and Angela" were selling crank out of room 56 at the Stonewall Jackson Inn and that a blue van was being used in the drug sales. The police set up surveillance at the motel and recognized Angela Highsmith and appellant as they entered a blue van in the motel parking area. They did not see the room from which they came. The police stopped the van and a quantity of methamphetamine was found.

In *Alabama* v. *White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), an officer of the Montgomery, Alabama police department received an anonymous telephone call. The caller stated that the accused would be leaving a certain apartment within an apartment complex at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to a certain motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case. The police officer and his partner traveled to the apartment complex and saw a brown Plymouth station wagon with a broken right taillight in the parking lot in front of the building which contained the apartment identified by the caller. The officers observed the accused leave the building and enter the station wagon. The officers followed the vehicle as it drove for a distance of four miles, including several turns, along the most direct route to the motel which the caller had identified. After one of the offi-

cers requested a patrol unit to stop the vehicle, the vehicle was stopped just short of the motel. The United States Supreme Court held that independent corroboration by the police of significant aspects of the informant's predictions imparted some degree of reliability to the other allegations made by the caller. The significance of the court's reference to "predictions" was explained as follows:

> We think it also important that, as in Gates, "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.*, at 245, 76 L.Ed.2d 527, 103 S.Ct. 2317. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information — a special familiarity with respondent's affair. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. *See id.*, at 245, 76 L.Ed.2d 527, 103 S.Ct. 2317. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

496 U.S. at 332.

We addressed a similar factual situation in *Kaiser* v. *State*, 24 Ark. App. 19, 746 S.W.2d 559 (1988). Randolph County officers had received information from Missouri officers that an informant had given them a tip that Kaiser would be traveling through Randolph County in a gray or silver 1979 Lincoln, license

number KLN436, and would be carrying a pistol and either $25,000 cash or 50 pounds of marijuana. Acting on this information the vehicle was stopped by Randolph County officers. The propriety of the stop arose in the context of a forfeiture proceeding. We held that because the vehicle appeared within the predicted area and period of time, matched the description given and bore the predicted license plates, those details were sufficient indicia of the informant's reliability to permit an investigatory stop of the vehicle. The supreme court reversed because the record did not otherwise show that the informant was reliable. *Kaiser* v. *State*, 296 Ark. 125, 752 S.W.2d 271 (1988).

After being reversed in *Kaiser*, we retreated somewhat when confronted with a closely analogous factual situation. *Lambert* v. *State*, 34 Ark. App. 227, 808 S.W.2d 788 (1991). In *Lambert* the state police received an anonymous tip that a man named "Jerry" would be leaving the Hot Springs area at approximately 3:00 p.m. driving to Little Rock in a black truck with "Woodline Motor Freight" in orange letters on it, hauling a shortbed trailer, and that Jerry would have approximately 10 pounds of marijuana with him. The police set up surveillance between Hot Springs and Little Rock and at about 3:50 p.m. stopped a vehicle traveling toward Little Rock which met this description. We held that the facts corroborating the tip were insufficient in quality and quantity to give rise to a sufficiently reasonable suspicion to make the stop.

The facts corroborating the details disclosed by the anonymous informant in the case at bar were less in quality and quantity than those in *Lambert* v. *State, supra*, and less in quality than those in *Alabama* v. *White, supra*. Here, the only facts corroborated by the police before making an investigatory stop were the presence of appellant and Ms. Angela Highsmith on the premises of the Stonewall Jackson Inn and their possession of a blue van. Significantly missing was corroboration of any prediction of future behavior as existed in *Alabama* v. *White, supra*, or other such details as would demonstrate a special familiarity with appellant's affairs.

Unless we overrule *Lambert* v. *State, supra*, it stands as a controlling precedent and requires a reversal of appellant's conviction.

JENNINGS, C.J., COOPER and MAYFIELD, JJ., would grant rehearing.

JOHN E. JENNINGS, Chief Judge, dissenting. I would grant the State's petition for rehearing. Certainly the matter is not clear cut, but I am persuaded that the panel's view was wrong.

Billy Ray Johnson, the appellant, was charged with the possession of methamphetamine with intent to deliver. After the trial court denied his motion to suppress evidence, Johnson entered a conditional plea of guilty and was sentenced to twenty years imprisonment with ten suspended. The appeal from the conditional plea of guilty is pursuant to Ark. R. Crim. P. 24.3(b).

At the hearing on the motion to suppress and on appeal, the issue is whether the stop of a certain van, in which appellant was a passenger, violated the United States Constitution's prohibition against unreasonable searches and seizures. The trial court held that it did not and on appeal, in an unpublished opinion, we reversed.

The pertinent facts were fairly set out in the division's opinion. On October 6, 1992, the Fort Smith Police Department received an anonymous phone call stating that Billy Ray Johnson and Angela Highsmith were in room 56 at the Stonewall Jackson Inn dealing methamphetamine and that a blue van was being used in the drug sales. Fort Smith police officers, including Terry Grizzle, set up surveillance in a parking lot across the street from the motel. They watched as Ms. Highsmith came out of the motel and entered the van on the driver's side. A few minutes later they saw Mr. Johnson also get into the van.

Officer Grizzle knew both Johnson and Highsmith. He was also aware of Johnson's previous felony drug convictions and had been involved with arresting him on several occasions in the past.

When the van left the Stonewall Jackson Inn, Grizzle called for a marked unit to stop it. Officer Grizzle approached Mr. Johnson and asked him if he was in possession of drugs. Johnson replied that he was not and then consented to a search of the van where methamphetamine was subsequently found.

On this evidence, the panel felt that *Lambert* v. *State*, 34

Ark. App. 227, 808 S.W.2d 788 (1991), governed and that *Alabama* v. *White*, 496 U.S. 325 (1990), was distinguishable. I cannot agree. This case, like *Lambert* and *Alabama* v. *White*, involves an anonymous tip. The question is whether that tip, taken together with other information, would constitutionally permit an investigative stop of a vehicle. Probable cause is required to make an arrest, but an investigative stop may be made upon "reasonable suspicion." Ark. R. Crim. P. 3.1; *Alabama* v. *White, supra; Willett* v. *State*, 298 Ark. 588, 769 S.W.2d 744 (1989); *Lambert* v. *State, supra.* In evaluating the information possessed by the police, courts are to consider the "totality of the circumstances." *See Alabama* v. *White, supra.* The test is, based on the totality of the circumstances, whether these officers had a reasonable suspicion that the defendant was engaged in criminal activity. *See White, supra.*

We summarized the facts in *Alabama* v. *White* in our opinion in *Lambert*:

> In *White* the police officer received a telephone call from an anonymous person, stating that Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case. The officers went to Lynwood Terrace Apartments and saw a brown Plymouth station wagon with a broken right taillight in the parking lot in front of the 235 building. The officers saw the defendant leave the 235 building and get into the station wagon. They then followed the defendant as she drove "the most direct route to Dobey's Motel." Just before the defendant reached the motel, she was stopped by the officers who, after obtaining her consent to search, found cocaine in the car.

The United States Supreme Court said in *White*, "Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car."

Again, in *Lambert*, we said:

> If *Alabama* v. *White* was a "close case," we cannot hold that the facts corroborating the tip in the case at bar are sufficient in quality or quantity, under the totality of the circumstances test, to give rise to reasonable suspicion. The only information that the trooper had at the time of the stop which matched with the anonymous telephone call was that he saw a Woodline Motor Freight truck on the highway between Hot Springs and Little Rock at about the time the caller said the truck should be there. In contrast to *White*, there was no confirmation of the departure point and the officers did not follow the truck to see whether it was, indeed, going to Little Rock as the caller predicted. The description of the vehicle here was also less precise.

In my view the facts in the case at bar more clearly permit a finding of reasonable suspicion than those in *Alabama* v. *White*. Here, the officers verified by surveillance that Johnson and Highsmith were at the Stonewall Jackson Inn, leaving in the blue van described in the tip. Unlike the situation in either *White* or *Lambert*, they could verify the identity of the suspects referred to in the tip because the officers knew them. Furthermore, Officer Grizzell had knowledge of appellant Johnson's prior drug convictions and had arrested him in the past.

In the case at bar, the trial judge's finding that the officers had a reasonable suspicion that Johnson was engaged in criminal activity was not clearly erroneous.

COOPER and MAYFIELD, JJ., join in this dissent.