Adam TATE *v.* STATE of Arkansas

CR 03-1441 167 S.W.3d 655

Supreme Court of Arkansas
Opinion delivered May 13, 2004

*The Cannon Law Firm, PLC*, by: *David R. Cannon*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Adam Tate was convicted of manufacturing a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia with intent to manufacture, possession of drug paraphernalia, and maintaining a drug premise. The court of appeals reversed Tate's conviction, holding that there was insufficient evidence to corroborate the testimony of his accomplices. However, because the court of appeals applied the wrong standard of review, we reverse that court and affirm Tate's conviction.

On December 11, 2001, Little Rock Police officers executed a search warrant at about 3:00 a.m. at the home of Kerri Harris. Harris's friend, Stacy Jester, and Jester's boyfriend, Adam Tate, had also been living at the residence on Oak Lane for about two months. Harris was in the front yard when the officers arrived. When the officers entered the home, Jester and Tate were standing in the front bedroom of the residence Upon searching that bedroom, officers found numerous items that could be utilized in the use or manufacture of drugs, including a box of syringes, a blister pack of pseudoephedrine, a propane torch, torch head, another small torch, several plastic baggies with various residues, a set of digital scales, four spoons, a glass smoking pipe, a pyrex plate, coffee filters, an electric burner, and $384 dollars in cash. Officer Ken Blankenship testified that there was a chemical odor consistent with the manufacture of methamphetamine present in the bedroom. Officer Barry Flannery testified that other items were found in the trunk of a Toyota Camry parked in front of the house; those items, found inside a black tote bag, included camp fuel, drain opener, coffee filters, salt, tubing, and pseudoephedrine tablets. Harris, Jester, and Tate were all arrested and charged with various drug-related crimes.

Prior to trial, Tate filed a motion to suppress the evidence seized during the search, arguing that the affidavit in support of the nighttime search warrant was insufficient. After a hearing, the trial court denied the motion. At trial, Tate moved for directed verdict, arguing that he could not be convicted upon the uncorroborated testimony of accomplices. The trial court denied the motion, finding that there had been sufficient evidence tending to connect Tate with the crime. As noted above, the jury convicted Tate of the various drug-related charges against him. On appeal, Tate challenges the denial of both his directed-verdict motion and his motion to suppress.

■ ■ For his first point on appeal, Tate argues that the trial court erred in failing to grant his motion for directed verdict, because the uncorroborated testimony of Harris and Jester was insufficient to support a conviction. When reviewing the sufficiency of the evidence, we determine whether there is substantial evidence to support the verdict, viewing the evidence in a light most favorable to the State. *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001). Arkansas law is clear that a conviction "cannot be had in any case of felony upon the testimony of an accomplice . . . unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2003). The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. § 16-89-111(e)(1)(B). The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. *Marta v. State*, 336 Ark. 67, 983 S.W.2d 924 (1999). The test for corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin v. State, supra.*

■ Corroboration must be evidence of a substantive nature, since it must be directed toward proving the connection of the accused with the crime, and not directed toward corroborating the accomplice's testimony. *Meeks v. State*, 317 Ark. 411, 878 S.W.2d 403 (1994). Circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *Jones v. State*, 349 Ark. 331, 78 S.W.3d 104 (2002). Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484

(2001). Rather, it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *King v. State*, 254 Ark. 509, 494 S.W.2d 476 (1973). However, evidence that only raises a suspicion of guilt is insufficient. *Meeks, supra*; *Prather v. State*, 256 Ark. 581, 509 S.W.2d 309 (1974). The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Andrews, supra*; *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996).

In reversing Tate's conviction, the court of appeals held that, in order to connect Tate with the commission of the offense, the State was required to prove that Tate exercised care, control, and management over the contraband in question and that Tate knew that the matter possessed was contraband. *Tate v. State*, 84 Ark. App. 184, 137 S.W.3d 404 (2003). That is, the court of appeals concluded that the proof tending to connect a defendant to the commission of an offense must rise to the same level of proof as is necessary to prove constructive possession.

In support of this conclusion, the court of appeals relied on *Miles v. State*, 76 Ark. App. 255, 64 S.W.3d 759 (2001), the case in which the court of appeals first applied the constructive-possession standard in an accomplice-testimony situation. In *Miles*, the court stated that, "[a]lthough constructive possession may be implied when the contraband is in the joint control of the accused and another person, joint occupancy, standing alone, is insufficient to establish possession or joint possession." *Miles*, 76 Ark. App. at 258 (citing *Stanton v. State*, 344 Ark. 589, 42 S.W.3d 474 (2001)). However, the *Stanton* case, on which the court of appeals relied, did not involve a question regarding the corroboration of accomplice testimony; rather, it was a straightforward constructive possession case. Thus, the *Miles* court — and, by extension, the court in *Tate* — erred in its reliance on *Stanton* to support its determination that the corroborating proof, in a case premised on an accomplice's testimony, must rise to the same degree of proof that would support a finding of constructive possession. That conclusion is inconsistent with this court's settled rule that the corroborating evidence must "*tend*[ ] *to connect* the defendant with the commission of the offense." *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003) (emphasis added); *Jones, supra*; *Martin, supra*; *McGhee v. State*, 338 Ark. 152, 992

S.W.2d 110 (1999). Of course, as discussed above, the corroborating evidence must be "stronger evidence than that which merely raises a suspicion of guilt." *See Meeks, supra.* However, this court has never held, as the court of appeals did in *Tate* and in *Miles*, that the corroborating evidence must rise to the level of proof necessary to support a constructive possession conviction.

We now turn to an examination of whether, applying the correct standard, there was sufficient corroborating evidence to support Tate's conviction. At trial, both Harris and Jester, whom the trial court determined as a matter of law to be accomplices, testified against Tate. Harris asserted that Tate had lived with her for approximately two months, and that Tate occasionally paid his half of the rent in methamphetamine. Harris also stated that when Tate moved in, he installed a security camera on the outside of the house; that camera filmed the driveway area outside of the house. Harris admitted to manufacturing methamphetamine, but denied that any of the items in Tate's bedroom belonged to her. Jester testified that Tate was her boyfriend, and that they had been living with Harris for a couple of months. Jester stated that on the night the search warrant was executed, Tate had been driving her car, a Toyota Camry. Further, she asserted that all of the items seized by the police belonged to Tate.

The test is whether, after excluding this testimony, the remaining evidence "independently establishes the crime and tends to connect the accused with its commission." *Marta, supra.* Clearly, the remaining evidence independently established the crime. Officer Ken Blankenship of the Little Rock Police Department narcotics division testified that, he recovered numerous items used in manufacturing methamphetamine, "scattered out along . . . a dresser" and in and around "a bunch of clothes all piled up in the north part" of the bedroom. Blankenship also testified that he detected a chemical odor, consistent with the smell of a meth lab, in the bedroom. Although he would not state that there was a lab actually operating in the house, "there was lab stuff in that house," and there were "components to manufacture [methamphetamine] in that residence."

■ Similarly, Detective Barry Flannery testified that he entered the front bedroom, where Jester was sitting on the bed and Tate was standing up. Flannery also searched a Toyota Camry in the front yard, where he found several other items commonly found in association with methamphetamine labs. Detective Greg Siegler testified that Tate and Jester were in the front bedroom; his

part of the search encompassed the deck in the back yard, where Siegler found a "trash bag that had numerous matchbook cover with the striker plates removed and two boxes [of] . . . pseudoephedrine tablets." Chris Harrison, a forensic chemist at the Arkansas State Crime Lab, testified that he assessed the scene of the search, and, in his professional opinion, methamphetamine was being manufactured in that residence.

As mentioned above, the evidence clearly established the commission of the crime. The remaining question is whether the evidence connects Tate with the crime. The officers who testified stated that Tate was in the house; at least three of them testified that Tate was in the very bedroom in which the majority of the manufacturing-related items were found. Tate's presence in the proximity of these items is circumstantial evidence of his involvement. Of course, circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *Jones, supra.* Where circumstantial evidence is used to support accomplice testimony, all facts in evidence can be considered to constitute a chain sufficient to present a question for resolution by the jury as to the adequacy of the corroboration, and this court will not look to see whether every other reasonable hypothesis but that of guilt has been excluded. *Id.; see also Martin, supra.*

We conclude that Tate's presence in a room filled with drug-manufacturing paraphernalia and smelling strongly of methamphetamine was sufficient evidence to tend to connect him to the offenses with which he was charged. His close proximity to the crime, as well as his association with others involved in a crime, were relevant factors in determining his connection as an accomplice with the crime, *see Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991), and these evidentiary facts constituted a chain sufficient to present the question of the adequacy of the corroboration to the jury. *See Jones, supra.* Therefore, we hold that the trial court did not err in denying Tate's motion for directed verdict.

Tate's second argument on appeal challenges the trial court's denial of his motion to suppress. As noted above, prior to trial, Tate filed a motion to suppress the evidence seized from the residence, arguing that the affidavit in support of the nighttime search warrant was insufficient. Particularly, he argues that there were no allegations in the affidavit that the residence contained any weapons or that he was armed. Instead, he claims the only item

offered in support was an allegation that there was a video camera mounted on the outside of the residence. In reviewing a trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based upon the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the trial court. *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003).

Rule 13.2(c) of the Arkansas Rules of Criminal Procedure governs the issuance of nighttime search warrants; that rule provides as follows:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

 This court has consistently held that a factual basis supporting a nighttime search is required as a prerequisite to the issuance of a warrant authorizing a nighttime search. *Cummings, supra; Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999); *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993). When a search warrant is issued in violation of Rule 13.2(c), a motion to suppress will not be granted unless the violation is "substantial." *Richardson, supra*. Failure to justify a nighttime search with sufficient factual information results in a substantial violation. *Cummings, supra*. Stated another way, we have held that conclusory language, unsupported by facts, is insufficient to justify a nighttime search. *Fouse, supra; Richardson, supra*.

Here, Tate takes issue with the affidavit submitted by Detective Michael Terry in support of the search warrant. In his affidavit, Terry stated that he had been assigned to the narcotics division of the Little Rock Police Department for three years, and in those three years, had been involved in the investigation of approximately eighty clandestine methamphetamine laboratories. Further, Terry averred that he had been told by an informant named Hooker Wayne Richey that Kerri Harris was manufacturing and selling methamphetamine from her residence on Oak Lane in Little Rock. Richey told Terry that, on December 8, 2001, he had seen Harris removing striker plates off of matches in order to manufacture methamphetamine; in addition, Richey said that a white male named "Adam" and a woman named Stacey Jester had moved in with Harris. Surveillance of the property on December 10 revealed that several vehicles pulled up to the residence, and the occupants of the vehicles entered the house and left after a few minutes. Terry asserted that this type of behavior was consistent with that of persons purchasing narcotics. In the portion of the affidavit dealing with the exigent circumstances supporting a nighttime search, Terry stated the following:

> Affiant states that the illicit narcotics activity is occurring at night and that the presence of cameras, which will reveal the officers to the occupants as they attempt to execute this search and seizure warrant, create a risk to the officers attempting to serve the warrant. Affiant further states that the evidence sought (methamphetamine) is easily concealed and/or destroyed. The affiant states that allowing the officers to execute this warrant at night, under the cover of darkness, will greatly diminish the danger to the approaching officers and also lessen the ability of the occupants to destroy the evidence sought.

The warrant was obtained at 1:45 a.m., and it was executed at approximately 3:00 a.m. on December 11, 2001.

Had the affidavit only contained the statement that "the evidence sought is easily concealed or destroyed," this court probably would have concluded that the affidavit did not contain sufficient facts. *See Richardson*, 314 Ark. at 519. However, the affidavit also contained a statement to the effect that the surveillance cameras, mounted on the outside of the house, would reveal the officers to the occupants and thereby create a risk to their safety. In *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998), there was information in the affidavit that the police informant had

seen drugs and weapons in the residence to be searched, the suspect had threatened one of the informants with a weapon within the last week, and that the location of the residence made speedy access impossible. The court held that this information constituted a sufficient factual basis for a nighttime search. Likewise, in *Cummings, supra,* the court affirmed the denial of a suppression motion where the affidavit stated that officers believed the evidence would be destroyed because the suspect was aware of the investigation. *Cummings,* 353 Ark. at 635.

Additionally, in *Foster v. State,* 46 Ark. App. 35, 876 S.W.2d 594 (1994), the court of appeals found sufficient an affidavit that stated that the suspect's residence was "so situated that the approach of the serving officers will be readily apparent to persons at the residence due to the residence being situated on the corner of Asher Avenue and Valentine Streets offering no immediate cover and/or concealment for the approaching officers to the residence and the use of darkness, as concealment, . . . would better protect the evidence sought as well as the approaching officers[.]" *Foster,* 46 Ark. App. at 37. The court of appeals agreed that the affidavit did contain some general conclusory language, but that language, "read in conjunction with additional factual information in the affidavit, such as the residence's location on a corner lot and the lack of immediate cover for the approaching officers, can support a finding of reasonable cause for a nighttime search." *Id.* While the facts were not extensive, the court of appeals concluded that it was "not a situation where we can characterize the statements as wholly conclusory or as having no factual basis." *Id.*

Likewise, in the present case, we conclude that, if the residents of the house were watching the surveillance cameras and became aware of the police approaching, they would be more likely to attempt to hide or destroy the drugs before the police could enter the house; there also would have been a greater danger to the officers' safety if the occupants were aware of their approach. Therefore, we hold that the trial court did not err in denying Tate's suppression motion. In affirming the trial court, we overrule the court of appeals' decision as well as that court's holding in *Miles v. State,* 76 Ark. App. 255, 64 S.W.3d 759 (2001).

HANNAH, J., not participating.