Max C. EASTIN v. STATE of Arkansas

CA CR 05-1324 244 S.W.3d 718

Court of Appeals of Arkansas
Opinion delivered December 6, 2006

*Hurst, Morrissey & Hurst, PLLC,* by: *Q. Byrum Hurst,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Max C. Eastin was convicted in a jury trial of manufacturing methamphetamine, use of paraphernalia to manufacture methamphetamine, possession of methamphetamine, and simultaneous possession of drugs and firearms. Mr. Eastin was sentenced to consecutive terms totaling forty years in prison, and now appeals. Mr. Eastin raises the following four points for reversal: (1) The incriminating evidence should have been suppressed because the search warrant was based on a confidential

informant whose reliability was not established; (2) The trial court erred when it refused to require the State to disclose the identity of the confidential informant; (3) There was insufficient evidence to support appellant's convictions; (4) The trial court erred in admitting a transcript of appellant's statement when the original tape no longer existed. We agree with appellant's first and fourth points, and we reverse and remand.

This case began on October 5, 2004, when Officer Pete Dixon obtained a warrant to search a houseboat on Lake DeGray where Mr. Eastin lived with his girlfriend, Teresa Holder. In support of the search warrant, Officer Dixon swore out the following affidavit:

1. Affiant states that on or about July 22, 2004, this Affiant was contacted by an individual that wished to cooperate with the Group 6 Narcotics Enforcement Unit, in that the individual wished to provide information to further felony drug investigations.

2. That this Affiant met with the aforementioned confidential informant and received numerous items of information, including information on the informant in lieu of prosecution.

3. That, included in the information provided, the informant stated that Teresa Holder was living with her boyfriend, Max Easton on a houseboat docked at Iron Mountain Marina on Lake DeGray and that methamphetamine was being manufactured on the boat.

4. That the informant described the houseboat as being light in color with a maroon stripe, that the boat was named the "Not Yet", that it was docked on C Dock at the marina, and that the boat is owned by Max Easton's father, who lives in Hot Springs, Arkansas.

5. That on or about July 24, 2004, this Affiant confirmed through the marina employees that Max Easton did indeed live on the "Not Yet", which is in fact docked on C Dock at the marina, and that a female, presumed to be Teresa Hoder, is commonly there.

6. That on or about October 5, 2004, this Affiant was contacted by Clark County Investigator Will Steed and advised that he was

investigating the theft of a personal watercraft and personal watercraft trailer, and that Max Easton and Teresa Holder were somewhat involved in the investigation. Investigator Steed stated that the watercraft and trailer were both stolen from Iron Mountain Marina and that the watercraft had been recovered in Hot Springs, Arkansas. During the course of the investigation Investigator Steed learned that the theft suspect is a friend of Max Easton's and commonly at Iron Mountain Marina to visit.

7. That this Affiant agreed to contact the aforementioned informant to see if any other information could be obtained with regards to the watercraft theft. This Affiant contacted the informant by phone and learned that the informant has been to the houseboat within the past seventy-two (72) hours. The informant stated that while in the houseboat a glass jar containing a pill soak was seen in plain view. The informant further stated that Teresa Holder possessed methamphetamine for personal use, and that they were undocking the boat at night and going out onto the lake to manufacture the drug.

8. That this Affiant contacted Investigator Steed and advised of the information. Investigator Steed confirmed through marina employees that the "Not Yet" has been going out onto the lake during nighttime hours lately.

When the search was conducted on October 5, 2004, Ms. Holder was the only person present at the boat, and she was injecting methamphetamine when the police arrived. The search of the boat uncovered various items of paraphernalia that are used to manufacture methamphetamine, as well as the finished product. The police also found a loaded handgun in a drawer in the master bedroom, along with coffee filters containing methamphetamine residue and a receipt bearing Mr. Eastin's name.

A pretrial hearing was held on Mr. Eastin's motion to suppress the evidence and his motion to reveal the identity of the confidential informant. At the hearing, Officer Dixon stated that he had not used the informant before, and that the informant had criminal charges pending and contacted the drug task force wanting to give information in exchange for leniency. Officer Dixon stated that the informant advised him that he had been on the boat within the past seventy-two hours and had observed methamphetamine. The informant further advised that the boat was being undocked at night to cook methamphetamine on the lake, al-

though he did not personally observe it because he could not be on the boat while Mr. Eastin was there. The trial court announced at the hearing that it was denying both of appellant's motions.

At the jury trial, Officer Dixon described the methamphetamine manufacturing process and testified that it was being manufactured on the boat. During Officer Dixon's testimony, the State moved to introduce the transcription of a taped statement taken from Mr. Eastin the day after the search. Appellant objected arguing that the tape was the best evidence, but the prosecutor explained that the tape was destroyed in a fire in his office. Appellant's transcribed statement was admitted by the trial court over objection.

In Mr. Eastin's statement, he acknowledged that he lived on the boat, which was owned by his father, and that Ms. Holder had been living with him. While nobody else lived on the boat, he stated that a woman named Holly would come there to cook methamphetamine. Mr. Eastin admitted that he smokes methamphetamine, and that he provided matches and pills for Holly to use in the manufacturing process. Mr. Eastin also indicated that he would sometimes trade the pills for the finished product. He stated that he personally does not know how to manufacture methamphetamine. Mr. Eastin admitted that the handgun found during the search belonged to him. Ms. Holder also gave a statement to the police, and she too informed them that she and appellant provided matches and Sudafed to help Holly manufacture methamphetamine.

There were two other witnesses at trial. Charles Garner testified that he smoked methamphetamine and was on the boat during a cook. He stated that Mr. Eastin was standing next to Holly at the stove while she cooked, so he assumed Mr. Eastin was helping her. Ms. Holder testified that "Holly cooked and Max and I both assisted her. We would get up and get something if she needed it."

Although listed as his third point on appeal, we must consider appellant's sufficiency arguments before any alleged evidentiary errors in order to protect his right to be free from double jeopardy. *See Cook v. State*, 77 Ark. App. 20, 73 S.W.3d 1 (2002). In conducting our review, we examine all the evidence, including the evidence allegedly admitted erroneously, and review the evidence in the light most favorable to the State. *Willingham v.*

*State*, 60 Ark. App. 132, 959 S.W.2d 74 (1998). We will affirm a conviction if there is substantial evidence to support the verdict. *Cook v. State, supra.*

Mr. Eastin has failed to preserve any of his challenges to the sufficiency of the evidence because his directed verdict motions were general in nature. After the State rested, appellant argued "the State had not made a prima facie case," and at the close of the evidence he argued for a directed verdict "based on lack of proof." Rule 33.1(a) and (c) of the Arkansas Rules of Criminal Procedure provide that a motion for directed verdict in a jury trial shall state the specific grounds therefor, and a defendant's failure to do so constitutes a waiver of any question pertaining to the sufficiency of the evidence. *See Grady v. State,* 350 Ark. 160, 85 S.W.3d 531 (2002). Because Mr. Eastin made no specific motion, all of his sufficiency arguments are waived.

Furthermore, even if appellant's sufficiency challenges had been preserved, none would have merit. Mr. Eastin argues that his convictions were not supported by substantial evidence because there was no evidence that the drugs or paraphernalia in the boat belonged to him, and because the evidence showed that it was someone else doing the manufacturing. He also contends that there was insufficient evidence to corroborate the incriminating testimony of his accomplice, Ms. Holder, as required by Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005). Mr. Eastin further challenges the simultaneous possession conviction of drugs and firearms conviction on the grounds that there was no evidence of any connection between the handgun and controlled substances.

An accomplice's testimony is sufficiently corroborated if the remaining evidence independently established the crimes and tended to connect the accused with their commission. *Tate v. State,* 357 Ark. 369, 167 S.W.3d 655 (2004). In this case, Ms. Holder indicated that appellant was an accomplice in the manufacturing process by providing matches and pills, and by getting things for Holly during the cook. Other independent evidence clearly showed the crimes were committed given that the search uncovered a methamphetamine lab. And Mr. Eastin was connected to the crimes given that he lived there, admitted to the police that he smoked methamphetamine, and told the police he provided ingredients for the cook. Mr. Eastin offers no convincing argument or authority for the proposition that the State failed in its proof because the firearm was not connected with the drugs. The gun

was found in the same boat as the other contraband, in a drawer with methamphetamine residue, and Mr. Eastin admitted to the police that it belonged to him. Although Mr. Eastin may not have been the principal actor in the manufacturing process, substantial evidence supported each of his convictions.

■ ■ We next address Mr. Eastin's argument that the contraband should have been suppressed because the search was based on an invalid search warrant with no facts bearing on the informant's reliability. In reviewing a suppression challenge, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). We agree with the appellant that the trial court clearly erred in finding there was probable cause to issue the search warrant.

Arkansas Rule of Criminal Procedure 13.1(b) provides:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such person or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witnesses shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

In this case the reliability of the unknown informant was not established, and other than his allegations there was nothing else to provide any probable cause. The informant volunteered the information to the police in an attempt for leniency for another unspecified charge,

but had never been used as an informant prior to then. The police could not corroborate the informant's statements other than to verify that Mr. Eastin lived on the boat with his girlfriend, and that the boat had been going on the lake at night. The informant did not accurately predict any future events, which could have bolstered his reliability. See *Johnson v. State*, 46 Ark. App. 67, 896 S.W.2d 607 (1994).

The State argues that the informant's statements were incriminating and therefore deemed reliable, citing *McCormick v. State*, 74 Ark. App. 349, 48 S.W.3d 549 (2001). However, the informant's statements were not incriminating because he did not implicate himself in any criminal activity. In fact, it was established at the suppression hearing that the informant did not even personally observe any of the methamphetamine cooks, so that information must have been based on hearsay.

In *Stanton v. State*, 344 Ark. 589, 42 S.W.3d 474 (2001), the supreme court held that no additional support for the reliability of an informant is required when he is a good citizen as opposed to a confidential informant whose identity is to be protected. In *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.3d 734 (1998), the supreme court said that a citizen-informant's tip ranks high on the probability scale as opposed to a confidential informant from the "criminal milieu." In the case at bar, we have a confidential informant from the criminal milieu whose identity is being protected. We hold that these circumstances do not meet the test for reliability.

The State also argues that this issue is not preserved, but we do not agree. Prior to the suppression hearing appellant argued in his written motion, "[t]he reliability of the confidential informant has not been determined by the affiant and should not provide a basis for the issuance of a search and seizure warrant." During the pretrial hearing the trial court stated, "Defendant's motion to exclude evidence will be denied." The State contends that the specific issue being argued on appeal was not developed or ruled on, and cites *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004), where the supreme court stated, "[t]his court will not address an argument on appeal where the record is 'barren of proof' as to the allegation made." In the present case there was ample proof presented to the trial court bearing on the informant's reliability, or lack thereof, in the form of the affidavit and Officer Dixon's testimony that he had never used the informant in the

past. The issue was raised and denied on the proof presented, and therefore it is preserved for appeal.[1]

 Finally, the State contends that even if this argument is preserved and there was no probable cause to issue the search warrant, we should nonetheless affirm this point based on the good-faith exception announced in *United States v. Leon*, 486 U.S. 897 (1984). We disagree. In *United States v. Leon, supra,* the Supreme Court held that an officer's objective, good-faith reliance on a facially valid warrant will avoid application of the exclusionary rule in the event that the magistrate's assessment of probable cause is found to be in error. In the present case, Officer Dixon's testimony at the suppression hearing showed that he had no information beyond what was in the affidavit, and he knew the informant had failed to establish any indicia of reliability. This court has recently stated that the objective standard under *Leon* requires officers to have a reasonable knowledge of our rules. *Hampton v. State*, 90 Ark. App. 174, 204 S.W.3d 572 (2005). It was the State's burden to establish applicability of the good-faith exception, *Hoay v. State*, 348 Ark. 80, 71 S.W.3d 573 (2002), and we hold that the State failed to meet its burden.

Mr. Eastin's next argument is that the trial court erred in failing to disclose the identity of the confidential informant. He contends that he needed the informant's testimony at both the suppression hearing and at trial to show that all of the informant's information related to criminal acts by Ms. Holder and not the appellant.

Pursuant to Ark. R. Crim. P. 17.5(b), disclosure is not required where the informant's identity is a prosecution secret and failure to disclose will not infringe upon the constitutional rights of the defendant. A defendant has the burden to show that the informant's testimony is essential to his defense. *Hill v. State*, 314 Ark. 275, 862 S.W.2d 836 (1993).

---

[1] We recognize that after the trial court denied appellant's motion to disclose the identity of the informant, appellant's counsel asserted that he could not proceed on his motion to exclude evidence "because obviously without the identity of the confidential informant it would be impossible to attack his credibility." However, we do not view this as an abandonment of his motion to exclude the contraband but rather an assertion that there would be no additional witnesses to call at the hearing. Neither the trial court nor the State deemed the argument abandoned either, given that the trial court subsequently denied the motion and the State gave extensive argument as to why the motion should be denied on its merits.

■ The trial court did not abuse its discretion in failing to compel disclosure of the informant because it was not needed for appellant's defense at either of the hearings. At the suppression hearing, the affidavit outlining the informant's knowledge was before the trial court and any further testimony by the informant was unnecessary. At the trial, the State did not rely on the informant's hearsay statements in proving the elements of its case. Instead, it relied on the items seized during the search, the testimony of the police and other witnesses, and appellant's inculpatory statement. Thus, the appellant had no need to cross-examine the informant about his knowledge.

■ Appellant's remaining argument is that the trial court erred in admitting a transcription of his statement to the police when the original tape no longer existed. We agree that the trial court abused its discretion in this regard based on our supreme court's holding in *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988). In that case, the appellant's statement was taped, but the tape was erased when it was reused. At trial, the appellant moved to suppress the statement because the State introduced a transcription of the tape without first disclosing the recorded statement pursuant to Ark. R. Crim. P. 17.1(a)(ii). The trial court allowed the transcription in evidence, but the supreme court reversed, holding that the appellant was prejudiced in that the recording was the best evidence, and without it the appellant had no way to determine whether the transcription was accurate. The supreme court went on to say that, on retrial, the trial court could allow oral testimony about the confession into evidence. Although the State asserts in the instant case that the tape was destroyed by accident and not through any bad faith, this fact is immaterial. Under the reasoning of *Hamm v. State, supra*, the transcription was inadmissible. This result is not intended to punish the State for any bad faith, but rather to protect the rights of the accused.

The State alternatively argues that even if the transcription was erroneously admitted the error was harmless when considering the overwhelming evidence of appellant's guilt. However, we cannot engage in any harmless-error analysis in light of the trial court's erroneous admission of the evidence obtained as a result of the illegal search.

Reversed and remanded.

HART, BIRD, GLOVER and NEAL, JJ., agree.

PITTMAN, C.J., GLADWIN, CRABTREE and BAKER, JJ., dissent.

ROBERT J. GLADWIN, Judge, dissenting. This court should not address appellant's motion to suppress because he abandoned it at the preliminary hearing and thus it is not preserved for review. Therefore, I would affirm.

On February 1, 2005, appellant filed a motion to exclude evidence. In that motion the only material allegation was that the reliability of the confidential informant had not been determined by the affiant and should not provide a basis for the issuance of the search warrant. He also filed a motion to reveal the identity of the confidential informant. The first issue addressed by the trial court during the preliminary hearing was the identity of the confidential informant. The trial court found that the appellant's motion to provide the identity of the confidential informant should be denied. After a short colloquy, the following exchange took place:

> COURT: All right the record is so noted, and we'll proceed to the motion to exclude evidence.
>
> MR. JOHNSON: Well your honor we can't proceed at this point because obviously without the identity of the confidential informant, it would be impossible to attack his credibility.
>
> COURT: All right the defendant's motion to exclude evidence will be denied.

Following this exchange, the prosecutor asked the court to go on the record to explain her reasons in response to the motion. After the prosecutor's short statement, appellant's counsel stated, "I thought the court had already ruled." The prosecutor thanked the court for humoring her and the discussion moved to the question of a continuance.

This court will not address an argument on appeal where the record is "barren of proof" as to the allegations made. *Munnerlyn v. State*, 292 Ark. 467, 470, 730 S.W.2d 895, 897 (1987). It is the appellant's burden to present a case before the trial court that fully and completely develops all the issues. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Walker v. State*, 314 Ark. 628, 864 S.W.2d 230 (1993). Moreover, it is the appellant's burden to obtain a clear ruling on an issue from the trial court. *Misskelley v.*

*State*, 323 Ark. 449, 915 S.W.2d 702 (1996), *cert. denied*, 519 U.S. 898 (1996); *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226 (1996).

In the present case appellant clearly abandoned his argument. When the trial court proceeded from the motion to provide the identity of the confidential informant to the motion to suppress, appellant's counsel stated that he could not proceed and made no other statement. The prosecutor's statement is mere surplusage as the court denied the motion based upon appellant's failure to proceed on his motion. It is clear that the court thought appellant had abandoned his motion by his immediate denial.

I agree with the majority that the trial court erred in admitting the transcription of appellant's statement to the police when the original tape no longer existed. *See Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988). However, the error was harmless considering the overwhelming evidence of appellant's guilt. *See Lewis v. State*, 74 Ark. App. 61, 48 S.W.3d 535 (2001). Therefore I would affirm appellant's conviction.

PITTMAN, C.J., and CRABTREE, J., join.

KAREN R. BAKER, Judge, dissenting. Although I agree with Judge Gladwin that the case should be affirmed, I dissent separately for two reasons. First, appellant could not abandon an argument that he never made. The written motion merely stated that the reliability of the confidential informant had not been determined by the affiant and should not provide a basis for the issuance of a search and seizure warrant. The written motion failed to cite any case law or factors to analyze the facts of the case, and, in fact, failed to cite any facts regarding the affidavit or the circumstances giving rise to its creation. When the trial court announced it was ready to hear appellant's motion to suppress, appellant responded that he could not proceed. The appellant had the burden of proving the invalidity of the search and the supporting documents. *Pritchard v. State*, 258 Ark. 151, 523 S.W.2d 194 (1975). He made no argument for the trial court to consider. Therefore, the trial court did not err in denying the motion.

Second, the affidavit was sufficient on its face to support the issuance of the warrant. The affidavit sworn by Officer Dixon allowed the trial court to determine that the informant was sufficiently reliable, including the officer's independent corroboration of the houseboat's location, specific description, and the

appellant's method of operation. *See Weatherford v. State*, 93 Ark. App. 30, 216 S.W.3d 150 (2005).

The reliability of informants is determined by a totality-of-the-circumstances analysis that is based on a three-factored approach the Arkansas Supreme Court adopted in *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998)(citing *State v. Bybee*, 884 P.2d 906 (Or. Ct. App. 1994)). The factors are: 1) whether the informant was exposed to possible criminal or civil prosecution if the report is false; 2) whether the report is based on the personal observations of the informant; 3) whether the officer's personal observations corroborated the informant's observations. *Id*. at 118, 959 S.W.2d at 741. The *Frette* court examined the satisfaction of these factors:

> The first factor is satisfied whenever [the informant] gives his or her name to authorities or if the person gives the information to the authorities in person. With regard to the second factor, an officer may infer that the information is based on the informant's personal observation if the information contains sufficient detail that it [is] apparent that the informant had not been fabricating [the] report out of whole cloth [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way. The third and final element may be satisfied if the officer observes the illegal activity or finds the person, the vehicle, and the location as substantially described by the informant.

*Id*. at 118, 959 S.W.2d at 741 (quoting *Bybee, supra*). The *Frette* court termed this explanation of the satisfaction of the factors a useful analytical framework and applied them to determine that an informants tip carried with it sufficient indicia of reliability to justify an investigatory stop. *Frette*, 331 Ark. at 118, 959 S.W.2d at 741. Because the informant in *Frette* was identifiable and thus subject to prosecution for making a false report, he was found to have greater reliability and satisfy the first factor. The informant's personal observation of the criminal activity gave him a reliable basis of knowledge and satisfied the second factor. The third factor was satisfied when the informant's information was corroborated by a law enforcement officer. *Id*. at 121, 959 S.W.2d at 743.

Under the totality of the circumstances in the instant case, and applying the factors to determine sufficient indicia of reliability of an informant, the trial court committed no error in denying the appellant's motion to suppress. Contrary to the majority's

analysis, there were sufficient facts to support the reliability of the informant. Following the reasoning used in both *Weatherford* and *Frette*, the reliability of the informant was established by the fact that he was identifiable and therefore subject to prosecution for making a false report regarding appellant's illegal activity. Additionally, the informant provided the information regarding appellant in lieu of prosecution for the informant's own illegal activity. If the information provided proved to be false, the informant was not only subject to prosecution for providing a false report, but also subject to losing any leniency regarding prosecution for his own previous acts. Furthermore, the information was based on personal knowledge and observation of the informant, observation which was verified again by Officer Dixon upon confirming the location of the houseboat and confirming through employees of the dock that appellant and his girlfriend did live on the boat and had been taking the boat out at night.

The majority dismisses the police officer's confirmation of the informant's statements that the houseboat was located at a particular place, that appellant and his girlfriend lived on the boat, and that the boat had been going out on the lake at night. Perhaps if the officers had waited to board the boat until the next time that appellant was moving the houseboat out onto the lake at night, the majority would have found sufficient corroboration. However, while accurately predicting future events may bolster reliability, accurate prediction is not required to establish reliability. Neither is it necessary under these facts. The trial court in this case had before it an officer's confirmation of not only the location and description of the vehicle/houseboat, but also the previous activity of moving the boat onto the lake at night as described by the informant. While none of this confirmed activity is illegal, nothing in our statutory or case law requires corroboration of the illegal activity itself. It only requires that the trial court determine that there are sufficient facts to establish the reliability of the informant which this trial court did.

Another disturbing aspect of the majority's analysis is its reliance on evidence at the suppression hearing that the informant did not personally observe any of the "methamphetamine cooks" so that the information must have been based on hearsay. The affidavit itself states that methamphetamine was being manufactured on the boat and that while on the houseboat, the informant had observed in plain view a glass jar containing a pill soak. A pill

soak is a preparatory step in the manufacture[1] of methamphetamine. *See Saul v. State*, 365 Ark. 77, 225 S.W.3d 373 (2006). This step in the manufacturing process is so critical that it has led to increased regulation and record keeping of the pills purchased by citizens of this State under no suspicion of illegal activity. *See* Combat Methamphetamine Epidemic Act of 2005, Pub. L. No. 109-177, 120 Stat. 256 (codified in scattered sections of 21 U.S.C. and 42 U.S.C.); Act of Feb. 22, 2005, No. 256, 2005 Ark. Acts 875. It is difficult to see how the observation of set forth in the affidavit could not support the issuance of a warrant. His observation certainly satisfies the second prong of the test discussed in *Frette*.

Applying the factors used to determine sufficient indicia of reliability of an informant, the trial court did not err in its denial of the appellant's motion to suppress.

---

[1] "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis. Ark. Code Ann. § 5-64-101(m) (Repl. 1997).