Max EASTIN *v.* STATE of Arkansas

CR 06-1474 257 S.W.3d 58

Supreme Court of Arkansas
Opinion delivered May 10, 2007

[Rehearing denied June 14, 2007.]

*Hurst, Morrissey & Hurst, PLLC, by: Q. Byrum Hurst, Jr.,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Max C. Eastin, the appellant, was convicted in a jury trial on four charges: (1) manufacturing methamphetamine; (2) use of paraphernalia to manufacture methamphetamine; (3) possession of a controlled substance; and (4) simultaneous possession of drugs and a firearm. A judgment and commitment order was entered on August 4, 2005, in conformity with the jury verdict, and Eastin was sentenced to serve consecutive sentences for á total time of 480 months in prison. Eastin appealed to the Arkansas Court of Appeals, which reversed his convictions in a published opinion. *See Eastin v. State,* 97 Ark. App. 81, 244 S.W.3d 718 (2006). This court has granted the State's petition for review. When we grant a petition for review, we treat the appeal as if it were originally filed in this court. *Brown v. State,* 368 Ark. 344, 246 S.W.3d 414 (2007). We affirm the circuit court and reverse the court of appeals.

The relevant facts regarding Eastin's appeal are as follows. On October 5, 2004, Officer Pete Dixon of the Group 6 Narcotics Enforcement Unit obtained a search warrant to search a houseboat named "Not Yet" docked at Iron Mountain Marina on Lake DeGray in Arkadelphia. Officer Dixon learned from a confidential informant that Eastin lived on the houseboat with his girlfriend,

Teresa Holder, and that methamphetamine was being manufactured on the houseboat. In the affidavit submitted for the search warrant, Officer Dixon attested to the following facts:

1. Affiant states that on or about July 22, 2004, this Affiant was contacted by an individual that wished to cooperate with the Group 6 Narcotics Enforcement Unit, in that the individual wished to provide information to further felony drug investigations.

2. That this Affiant met with the aforementioned confidential informant and received numerous items of information, including information on the informant in lieu of prosecution.

3. That, included in the information provided, the informant stated that Teresa Holder was living with her boyfriend, Max [Eastin] on a houseboat docked at Iron Mountain Marina on Lake DeGray and that methamphetamine was being manufactured on the boat.

4. That the informant described the houseboat as being light in color with a maroon stripe, that the boat was named the "Not Yet", that it was docked on C Dock at the marina, and that the boat is owned by Max [Eastin's] father, who lives in Hot Springs, Arkansas.

5. That on or about July 24, 2004, this Affiant confirmed through the marina employees that Max [Eastin] did indeed live on the "Not Yet," which is in fact docked on C Dock at the marina, and that a female, presumed to be Teresa Holder, is commonly there.

6. That on or about October 5, 2004, this Affiant was contacted by Clark County Investigator Will Steed and advised that he was investigating the theft of a personal watercraft and personal watercraft trailer, and that Max [Eastin] and Teresa Holder were somewhat involved in the investigation. Investigator Steed stated that the watercraft and trailer were both stolen from Iron Mountain Marina and that the watercraft had been recovered in Hot Springs, Arkansas. During the course of the investigation Investigator Steed learned that the theft suspect is a friend of Max [Eastin's] and commonly at Iron Mountain Marina to visit.

7. That this Affiant agreed to contact the aforementioned informant to see if any other information could be obtained with regards to the watercraft theft. This Affiant contacted the informant by phone and learned that the informant has been to the houseboat

within the past seventy-two (72) hours. The informant stated that while in the houseboat a glass jar containing a pill soak was seen in plain view. The informant further stated that Teresa Holder possessed methamphetamine for personal use, and that they were undocking the , boat at night and going out onto the lake to manufacture the drug.

8. That this Affiant contacted Investigator Steed and advised of the information. Investigator Steed confirmed through marina employees that the "Not Yet" has been going out onto the lake during nighttime hours lately.

A search warrant was issued by the circuit court and subsequently executed. Police officers found methamphetamine and the paraphernalia used for its manufacture on the houseboat, as well as a loaded handgun in a dresser located beside Eastin's bed.

On February 1, 2005, Eastin moved to suppress the evidence seized from the houseboat and argued in that motion that "[t]he reliability of the confidential informant had not been determined by the affiant and should not provide a basis for the issuance of a search and seizure warrant." He also moved that the State reveal the identity of the confidential informant. A pretrial hearing was held on both motions. After hearing testimony from Officer Dixon, the circuit court first denied Eastin's motion to reveal the informant's identity and then denied his motion to suppress the items seized in the search, after defense counsel informed the circuit court that he was unable to proceed without knowing the identity of the informant.

A jury trial was held on July 20, 2005. During Officer Dixon's testimony, the State moved to introduce a transcript of a recorded statement given by Eastin to Officer Dixon the day after the houseboat was searched. Eastin, through his counsel, objected and argued that the tape recording itself was the best evidence. The State explained that the tape had been destroyed in a fire in the prosecutor's office, and defense counsel did not contest this fact. Over defense counsel's objection, the circuit court allowed the transcript of the recorded statement to be introduced into evidence.

At the end of the State's case, defense counsel moved for a directed verdict and argued that "the State [had] not made a prima facie case." The circuit court denied the motion. Eastin chose not to testify at trial, and the defense rested without presenting any

evidence. Defense counsel then renewed his motion for a directed verdict, "based on lack of proof," and his motion was again denied. The jury returned a guilty verdict on all four counts and assessed the sentence already referenced in this opinion.

*I. Sufficiency of the Evidence*

Eastin urges that there was insufficient evidence to convict him of manufacturing methamphetamine, using paraphernalia to manufacture methamphetamine, possession of a controlled substance, and simultaneous possession of a firearm and a controlled substance. He contends that the State offered no evidence that he personally was in possession of any contraband and further maintains that the evidence seized from the boathouse is sufficient only to show that Teresa Holder possessed contraband. Eastin insists that while he may have admitted to the use of methamphetamine in his statement, there is no other independent evidence to indicate that he was the possessor of the contraband seized from the boathouse. He further claims that there is no evidence that he knew how to manufacture methamphetamine or ever participated in the manufacturing process other than the testimony of Teresa Holder, an accomplice, which is insufficient to convict a defendant absent some other independent evidence. Finally, he argues, regarding the firearm seized from his dresser, that there was no evidence that showed any connection between the firearm and a controlled substance.

Although Eastin raises this issue as his third point on appeal, this court must consider his sufficiency arguments before addressing any asserted evidentiary errors to preserve Eastin's freedom from being placed in double jeopardy. *See Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006).

We first consider whether this issue is preserved for appeal. Rule 33.1(c) of the Arkansas Rules of Criminal Procedure provides:

> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is

insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

. . . .

Hence, our rule is clear that a motion for a directed verdict must specifically advise the circuit court about how the evidence was insufficient. *See Smith v. State*, 367 Ark. 274, 239 S.W.3d 494 (2006). As a further matter, this court has said that Rule 33.1(c) must be strictly construed and that the reasons behind the requirement that specific grounds must be stated and the absent proof must be specified is to allow the State an opportunity to reopen its case and present the missing proof. *See Davis v. State*, 365 Ark. 634, 232 S.W.3d 476 (2006); *Smith, supra.*

At the end of the State's case, defense counsel made the following statement: "[s]ince the State rested, I'll make a motion for directed verdict of acquittal, based on the fact the State has not made a prima facie case." Defense counsel said nothing further. The defense presented no evidence, and after Eastin informed the circuit court that he chose not to testify, defense counsel said: "[w]e rest, your Honor, and I renew the motions that I made at the end of the State's case for directed verdict acquittal, based on lack of proof."

We conclude that Eastin's sufficiency argument is not preserved for appeal. His directed-verdict motions were not specific and did not advise the circuit court or the State as to which element of the State's case was missing. In short, Eastin's directed-verdict motions are too general in nature, and this court has repeatedly said that "it will not address the merits of an appellant's insufficiency argument where the directed-verdict motion is not specific." *Smith*, 367 Ark. at 284, 239 S.W.3d at 502. Because Eastin's sufficiency arguments are not preserved for appeal, we will not consider them.

## II. Motion to Suppress

Eastin also claims on appeal that the circuit court should have granted his motion to suppress the evidence seized from the boathouse because the search warrant for the boathouse was improperly issued. He asserts that the search warrant disclosed no information regarding specific items that were to be located on the property but only alluded to past drug use and past drug manufacture. He further contends that Officer Dixon gave no information concerning the reliability or credibility of the informant in the

affidavit for the search warrant as required by Rule 13.1 of the Arkansas Rules of Criminal Procedure.

Eastin further claims that the allegations concerning the past manufacture and use of methamphetamine in the affidavit contain no time frame for the alleged criminal activity other than the informant's statement that he witnessed Teresa Holder with meth-amphetamine on the houseboat within seventy-two hours of contacting Officer Dixon. Eastin argues, in summary, that the affidavit contained nothing but a bare assertion of past criminal conduct, which was not a proper basis for the issuance of the search warrant.

The State asserts, in rebuttal, that Eastin's point is not preserved for appeal. We agree. In *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004), this court refused to reach the merits of an argument that was not fully developed before the circuit court. The facts in *Romes, supra,* are similar to those presented here. In that case, the appellant filed a motion to suppress his custodial statement, which was denied by the circuit court. In his motion to suppress, he raised the issues of whether his arrest was pretextual and also whether he had been promptly brought before a judicial officer for an arraignment and probable-cause determination. A hearing was held on the motion to suppress, but the only evidence presented concerned the pretextual arrest. The appellant offered no proof regarding the alleged delay in bringing him before a judicial official. At the conclusion of the hearing, the circuit court generally denied the motion to suppress.

This court held on appeal that the appellant's argument on the alleged delay in *Romes, supra,* was not preserved for appeal, and we said:

> This court will not address an argument on appeal where the record is "barren of proof" as to the allegation made. *Munnerlyn v. State*, 292 Ark. 467, 470, 730 S.W.2d 895, 897 (1987). It is the appellant's burden to present a case before the trial court that fully and completely develops all the issues. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Walker v. State*, 314 Ark. 628, 864 S.W.2d 230 (1993). Moreover, it is the appellant's burden to obtain a clear ruling on an issue from the trial court. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 519 U.S. 898 (1996); *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226 (1996). In both *Misskelley* and *Bowen,* the appellants raised multiple arguments in their motions to suppress. This court refused to reach

the merits of those arguments that were not specifically ruled upon by the trial court in denying the motions.

> Here, the issues regarding the delay in being brought before a judicial officer were raised by Appellant in his written motion to suppress. However, they were not developed, either factually or legally, during the hearing on the motion. To the contrary, the record of the hearing demonstrates that Appellant abandoned these arguments in favor of pursuing the issue of his alleged pretextual arrest. Moreover, the record demonstrates that Appellant did not obtain clear rulings on these issues.

*Id*. at 46, 144 S.W.3d at 763-64.

In the case at hand, Eastin wrote in his motion to suppress that "[t]he reliability of the confidential informant had not been determined by the affiant and should not provide a basis for the issuance of a search and seizure warrant." At the hearing on Eastin's motion to suppress evidence and motion to reveal the identity of the informant, the circuit court first heard testimony regarding the identity of the informant and next denied the motion to reveal his or her identity. The following dialogue then took place:

> BY THE COURT: All right, the record is so noted, and we'll proceed to the motion to exclude the evidence.
>
> BY MR. JOHNSON [Eastin's counsel]: Well, your Honor, we can't proceed at this point because obviously without the identity of the confidential informant, it would be impossible to attack his credibility.
>
> BY THE COURT: All right. Defendant's Motion to Exclude Evidence will be denied.

The State briefly concluded by arguing its response to the motion to suppress for the record.

 Based on *Romes, supra*, Eastin's arguments regarding his motion to suppress are not properly preserved for appeal and should not be addressed by this court. First, his arguments that the affidavit disclosed no specific items to be found on the property, contained an insufficient time frame, and alluded to nothing more than a bare assertion of past criminal conduct were never raised to

the circuit court. An issue must be raised to the circuit court to be preserved for appellate review. *See Talbert v. State*, 367 Ark. 262, 239 S.W.3d 504 (2006). In addition, though Eastin's argument regarding the reliability of the confidential informant was raised in his motion to suppress, his argument was never developed before the circuit court, and he failed to obtain a specific ruling on the issue. Accordingly, it is not preserved for our review. *See, e.g., George v. State*, 358 Ark. 269, 189 S.W.3d 28 (2004).

Moreover, as in *Romes, supra,* we conclude that Eastin's counsel abandoned his motion to suppress after the circuit court denied his motion to reveal the confidential informant's identity. As noted in the colloquy quoted above, defense counsel specifically told the court that he could not proceed with the motion to suppress without knowing the identity of the confidential informant. Defense counsel did nothing more on his motion to suppress after making that statement. This court has said that "[t]he burden of providing a record sufficient to demonstrate error is upon the appellant." *Raymond v. State*, 354 Ark. 157, 163, 118 S.W.3d 567, 571 (2003). This Eastin did not do because defense counsel abandoned the argument.

### III. Confidential Informant's Identity

Eastin next contends that the circuit court erred in denying his motion to reveal the identity of the confidential informant. He urges that, according to the affidavit for the search warrant, the informant witnessed alleged criminal activity, and the general rule is that when an informant is a witness or participant in the criminal activity, his or her identity should be disclosed. He insists that he needed the identity of the informant at the suppression hearing and at trial to show that any contraband the informant was aware of was owned and possessed by Teresa Holder, not by Eastin.

Rule 17.5(b) of the Arkansas Rules of Criminal Procedure reads: "[d]isclosure shall not be required of an informant's identity where his identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant." In support of his argument, Eastin cites *James v. State*, 280 Ark. 359, 658 S.W.2d 382 (1983), for the general rule that when an informant is also a witness or participant in the alleged criminal activity, his identity should be disclosed. However, in *James v. State*, this court also was clear that the general rule is not a *per se* rule but rather is dependent upon the circumstances of each case. *See James,*

*supra* (disclosure of informant's identity not required where appellant's motion for disclosure was supported only by a statement that he was interested in getting informant's version of the story and provided no specific contention that it would be helpful in the defense).

This court further discussed the issue of an informant's identity in *Hill v. State*, 314 Ark. 275, 862 S.W.2d 836 (1993):

> The trial court obviously intended to give effect to the "informers' privilege." Under it, disclosure shall not be required of an informant's identity where his identity is a prosecution secret, and a failure to disclose will not infringe upon the constitutional rights of the defendant. *Roviaro v. United States*, 353 U.S. 53, (1957). "When the disclosure of the informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 61-62. In determining whether the privilege shall prevail, the trial court must balance the public interest in getting needed information against the individual's right to assert a defense. The trial court must consider the crime charged, the possible defenses, the significance of the informant's testimony, and any "other relevant factors." *Id.* at 61. The burden is upon the defendant to show that the informant's testimony is essential to his defense. *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973).

*Hill*, 314 Ark. at 280, 862 S.W.2d at 839.

In *Reyes v. State*, 329 Ark. 539, 954 S.W.2d 199 (1997), this court observed that it has repeatedly held that circuit courts do not abuse their discretion when refusing to order the State to disclose the identity of an informant when the defendant is merely charged with possession of a controlled substance, the informant does not directly participate in the crime, and his involvement only leads to the issuance of a search warrant. The burden is on the defendant to show that the informant actually participated in the alleged criminal activity. *See Brown v. State*, 310 Ark. 427, 837 S.W.2d 457 (1992). If the defendant cannot present sufficient evidence that the informant was a participant, the refusal to disclose the informant's identity is not prejudicial to his defense. *See id.*; *see also McDaniel v. State*, 294 Ark. 416, 743 S.W.2d 795 (1988) (failure to identify informant was not prejudicial to defense where there was no evidence that the informant participated in the crime, was a witness to the crime, or possessed any exculpatory evidence).

■ We hold that the circuit court did not err in refusing to order the State to reveal the identity of the informant. The reason is simple. Eastin has not met his burden of showing that the identity of the informant was necessary to his defense. In Eastin's motion to reveal the informant's identity, he asserts that the informant "provided information that he/she was present at the time the criminal offenses alleged in the information were being committed." Yet, Officer Dixon's testimony at the pretrial hearing revealed that the informant never actually witnessed Eastin possessing or manufacturing methamphetamine. The testimony revealed that the informant witnessed methamphetamine on the houseboat but not while Eastin was actually there, and the informant was not present at the time the search warrant was executed.

In sum, Eastin did not present sufficient evidence that the informant witnessed the crimes allegedly committed by Eastin. Further, Eastin provided no evidence that the informant participated in any criminal activity. The only argument Eastin's counsel made to the circuit court regarding the necessity of the informant's identity to the defense was that the informant might provide exculpatory evidence and was an indispensable witness to the commission of a crime.[1] Thus, Eastin did not show how the informant's identity was essential to his defense.

### IV. Transcript

Eastin next contends that the circuit court erred in allowing the introduction of the transcript of his statement when the original recording had been destroyed. He claims that the State should not have been allowed to introduce the transcript but rather should have been limited only to the testimony of Officer Dixon as to his recollection of what Eastin said. Eastin asserts that the statement contained damaging admissions and that the introduction of the transcript is *per se* reversible error.

It is axiomatic that circuit courts have broad discretion in evidentiary rulings, and a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *See White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006).

---

[1] Eastin argues in his brief on appeal that the identity of the confidential informant was important to establish by testimony that Teresa Holder, not Eastin, was using and manufacturing methamphetamine on the houseboat. That specific argument was not made to the circuit court, and we will not consider it on appeal.

The basis of Eastin's argument under this point is that the admission of the transcript of his statement when the original recording was unavailable violated the best-evidence rule. Rule 1002 of the Arkansas Rules of Evidence states: "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by [rules adopted by the Supreme Court of this state or by] statute."

The facts of this case are similar to those in *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988). In that case, the appellant gave a statement to police that was recorded on a tape and then transcribed by a police secretary. The tape was later erased when it was reused, and the transcript of the statement was admitted into evidence by the circuit court over the appellant's objection. This court held that the transcript could not be admitted because the tape was the best evidence. This court said:

> We are further persuaded that appellant was not only entitled to the written transcription prepared by the state from the recorded statements, but appellant was entitled to discover the tapes not only because the tapes represented the best evidence, but without the tapes, appellant had no way of comparing the transcription in order to determine if the transcription was a correct reproduction of the recordings. Indeed, the statement as well as the tapes would have been most helpful to appellant in his cross-examination of state's witnesses.

*Id.* at 387-88, 757 S.W.2d at 933 (quoting *Williamson v. State*, 263 Ark. 401, 405, 565 S.W.2d 415, 418 (1978)); *see also Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988), *overruled on other grounds by MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998) (cautioning prosecutors to make sure the original recording of a statement is kept available for a reasonable time after the statement has been transcribed because the tape's unavailability may not save a transcript from inadmissibility). Further, in *Hamm, supra*, this court made it clear that the transcript itself could not be admitted into evidence but that this did not preclude oral testimony about the confession.

In the instant case, the circuit court may well have erred in admitting the transcript into evidence when the original recording was unavailable. *See Hamm, supra*. Nevertheless, we agree with the State that this was harmless error. This court has said that even when a circuit court errs in admitting evidence, this court will

affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is slight. *See Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). To determine if the error is slight, this court looks to see whether the defendant was prejudiced by the erroneously admitted evidence. *See id.* Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice by the defendant. *See Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). When the erroneously admitted evidence is merely cumulative, there is no prejudice, and a conviction will not be reversed for harmless error in the admission of evidence. *See id.*

We conclude that there was overwhelming evidence of guilt presented by the State. Two witnesses, Teresa Holder and Charles Garner, testified that Eastin had used methamphetamine in their presence. They testified that Eastin had allowed others to manufacture methamphetamine on the houseboat and that he had assisted them to some degree. Paraphernalia used to manufacture methamphetamine and a firearm were seized from the houseboat and introduced into evidence. Under these facts, the transcript of Eastin's statement was merely cumulative, and the admission of the transcript was harmless error.

Affirmed.

Court of appeals reversed.