Cite as 2022 Ark. App. 502

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-22-251

| | |
|---|---|
| VICKIE JOYCE GRAHAM<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** December 7, 2022<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT<br>[NO. 02CR-21-147]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

**KENNETH S. HIXSON, Judge**

Appellant Vickie Joyce Graham was convicted in a jury trial of possession of methamphetamine, possession of drug paraphernalia, and simultaneous possession of drugs and firearms.[1] Graham was sentenced to concurrent prison terms of one, one, and ten years, respectively. Graham now appeals, challenging the sufficiency of the evidence supporting her convictions. Graham argues that there was an insufficient chain of custody to link her to the item of suspected drug paraphernalia and drug residue tested by the crime lab,[2] and

---

[1]The simultaneous-possession-of-drugs-and-firearms charge was premised on the State's allegation that Graham possessed methamphetamine while in possession of three handguns.

[2]As will be discussed, *infra*, Graham's chain-of-custody argument is actually a challenge to the admissibility of the evidence rather than a sufficiency-of-the-evidence challenge.

she also contends that there was insufficient evidence that she possessed a useable amount of methamphetamine. We affirm Graham's conviction for possession of drug paraphernalia, but we reverse and dismiss her convictions for possession of methamphetamine and simultaneous possession of drugs and firearms because the State failed to prove that Graham possessed a useable amount of methamphetamine.

## I. *Facts*

The State called two witnesses at the jury trial, and there were no defense witnesses. The State's witnesses were Officer Ross Fuller of the Ashley County Sheriff's Office and Kim Brown, a chemist with the Arkansas State Crime Laboratory.

Officer Fuller testified that on June 7, 2021, he came in contact with Graham while she was in a parked car near her former brother-in-law's house. Officer Fuller approached Graham's car and saw her sitting in the front seat writing on a note pad. After Officer Fuller made contact with Graham, she told Officer Fuller that a meth pipe was lying between the front seats right next to her. Officer Fuller was wearing a body camera, and in the recording played to the jury, Graham stated, "There's my meth pipe." Officer Fuller testified that he seized the meth pipe and that he recognized it as a meth pipe. Officer Fuller described the meth pipe as a stem connected to a bulb underneath. He stated that a user would ingest methamphetamine by pushing methamphetamine into the pipe, lighting a lighter under the bulb, and inhaling from the stem. A still photograph from Officer Fuller's body-camera recording was admitted that showed him holding the meth pipe.

2

Officer Fuller testified that the meth pipe was "loaded with methamphetamine." When asked to elaborate, Officer Fuller stated that "there was suspected methamphetamine residue with a crystal-like substance, which is commonly methamphetamine, and burned methamphetamine, which is commonly used methamphetamine." Officer Fuller indicated that the meth pipe appeared to contain both methamphetamine residue that had not been burned and methamphetamine that had been burned.

Officer Fuller testified that he found two loaded handguns in plain sight on the passenger seat and an unloaded handgun in the glove compartment. The note that Officer Fuller saw Graham writing as he approached her car was also introduced into evidence. The note states:

> Hey Phillip,
>
> If someone says they seen me at your house I was on other side of fence. Hiding and thinking, crying and asking for intervention from God. Anyway I was only hid there to get thru field. I was here to kill your brother. Then I got high!!!

Officer Fuller stated that "Phillip" is Graham's former brother-in-law.

Officer Fuller testified about his handling of the meth pipe. The meth pipe itself, however, was not offered into evidence. Officer Fuller stated that he put the meth pipe inside an evidence bag and put the evidence bag inside a box. Officer Fuller taped the box with evidence tape and placed the box inside a folder. Officer Fuller stated that the folder containing the meth pipe was then sent to the crime lab.

On cross-examination, Officer Fuller stated that Investigator Josh Pollack is the person in their department who sends all evidence to the crime lab. Investigator Pollack,

3

however, did not testify. Officer Fuller stated that the last time he saw the evidence container that he had packaged was on June 8, 2021, which was the day following the arrest.

Kim Brown is a chemist with the Arkansas State Crime Laboratory. Ms. Brown testified that she tested an item in the case involving Vickie Graham. Ms. Brown stated that the item came in a large, sealed envelope, and inside the envelope was a sealed box. Inside the box was a glass pipe. Ms. Brown visually inspected the pipe and performed tests on it. Ms. Brown stated that she completed a lab report on January 6, 2022.

At this time, the State moved to introduce the lab report, and Graham objected, arguing that the State had failed to establish a sufficient chain of custody of the evidence that was tested at the crime lab. The trial court overruled Graham's objection, stating, "I'm overruling the objection on the chain of custody" and "I'm going to allow [the prosecutor] to go forward." Over Graham's objection, the lab report was admitted, and Ms. Brown continued with her testimony.

Ms. Brown stated that the glass pipe contained an *off-white and a burned residue*. When asked what procedure she used to test the contents of the pipe, Ms. Brown stated:

> Normally, what I do if I have a glass pipe with residue in it, I might try to scrape a little bit out to see if it turns orange . . . which is a spot test to indicate that there's a drug in there . . . . Then I rinse it with methanol and put some of the methanol in the test tube and then some in another test tube to perform two different tests.

Ms. Brown stated that her test results confirmed the presence of methamphetamine. The lab report that was admitted into evidence described the evidence as "one glass pipe

4

*containing off-white and burned residue*." (Emphasis added.) The test result documented by the lab report was "*Residue*," "methamphetamine." (Emphasis added.)

On cross-examination, Ms. Brown testified that the evidence container was received at the crime lab on August 26, 2021 (which was more than a month and a half after Officer Fuller had last seen the container). Ms. Brown testified that, during her testing, she did not weigh the substance that was in the meth pipe. Ms. Brown stated that the meth pipe was still at the crime lab. Neither the meth pipe nor the packaging and shipping material containing the meth pipe was offered into evidence.

At the conclusion of the jury trial, Graham made motions for directed verdict as to all the charges. Graham argued that there was insufficient evidence to support a conviction for possession of methamphetamine or simultaneous possession of drugs and firearms because the State failed to prove that she possessed a useable amount of methamphetamine. Graham also argued that there was an insufficient chain of custody established, and for that reason, there was insufficient evidence that she possessed drug paraphernalia. The trial court denied Graham's directed-verdict motions, and the jury convicted her of all three charges.

In this appeal, Graham challenges the sufficiency of the evidence to support her convictions. She argues that the State failed to establish a chain of custody linking her to the item tested at the crime lab, and also that there was insufficient evidence that she possessed a useable amount of methamphetamine.

II. *Analysis*

5

Initially, we observe that, although Graham purports to raise two separate arguments challenging the sufficiency of the evidence to support her convictions, her chain-of-custody argument is actually an evidentiary claim. The purpose of establishing a chain of custody is to *prevent the introduction* of evidence that has been tampered with or is not authentic, and we will not reverse the trial court's ruling to admit such evidence over a chain-of-custody objection absent an abuse of discretion. *See Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818. Graham preserved her objection to the admissibility of the evidence tested at the crime lab and the lab report when she objected during the chemist's testimony that there was an insufficient chain of custody, and the trial court disagreed and admitted the evidence over Graham's objection. We further observe that in Graham's appellate brief, she states that this evidence was erroneously admitted because of an insufficient chain of custody. Thus, we treat Graham's chain-of-custody argument as a challenge to the admissibility of the evidence rather than a challenge to the sufficiency of the evidence.

We consider sufficiency of the evidence before addressing other alleged trial errors. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). Therefore, we will consider Graham's sufficiency argument that challenges the proof that she possessed a useable amount of methamphetamine before addressing her chain-of-custody argument. When testing the sufficiency of the evidence, our review necessarily includes evidence both properly and improperly admitted. *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

A. Useable Amount of Drugs

Graham argues that there was insufficient evidence to support her convictions for possession of methamphetamine and simultaneous possession of drugs and firearms. Graham premises this argument on her claim that the State failed to prove that she possessed a useable amount of methamphetamine.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

In *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990), the supreme court reversed a conviction for cocaine possession based on trace amounts of the narcotics being found in a bottle and on plastic straws. The supreme court wrote:

> The intent of the legislation prohibiting possession of a controlled substance is to prevent use of and trafficking in those substances. Possession of a *trace amount or residue* which cannot be used and which the accused may not even know is on his person or within his control contributes to neither evil.
>
> We recognize the possibility that one may be in possession of an amount of a controlled substance sufficient to permit knowledge of its presence and yet still not be in possession of a useable amount. We agree, however, with the courts that have concluded that possession of less than a useable amount of a controlled substance is

7

not what legislators have in mind when they criminalize possession because it cannot contribute to future conduct at which the legislation is aimed, that is, use of or trafficking in drugs.

It is clear in this case that Harbison was found to be in possession of a bottle which had less than a useable amount of cocaine. As a practical matter, it was a bottle which had had cocaine in it, and that is not a crime.

*Harbison*, 302 Ark. at 322–23, 79 S.W.2d at 151 (emphasis added).

Citing *Harbison*, Graham argues that there was a failure of proof that she possessed a useable amount of methamphetamine. Graham notes that both Officer Fuller and Ms. Brown described the methamphetamine inside the pipe as "residue" and that in her testing of the substance, Ms. Brown did not weigh it. Graham argues further that neither of these State's witnesses testified as to whether the amount of methamphetamine was a useable amount. Thus, Graham argues that the trial court erred in not granting her motion for directed verdict on the charges of possession of methamphetamine and simultaneous possession of drugs and firearms.

We agree that there was insufficient evidence to sustain Graham's convictions for possession of methamphetamine and simultaneous possession of drugs and firearms because the State failed to establish that Graham was found to be in possession of a useable amount of methamphetamine. In *Harbison*, *supra*, the supreme court stated that the legislation prohibiting possession of a controlled substance is to prevent the *use* of the substance, and that possession of a trace amount *or residue* that cannot be used does not contribute to the evil. In *Kolb v. State*, 2021 Ark. 58, the supreme court stated that proof of a detectable amount of a controlled substance in a *consumable form* is sufficient evidence for a fact-finder

to infer that the accused possessed a useable amount of the controlled substance. In this case, both the investigating officer and the crime-lab chemist testified that the pipe contained *residue* of burned and unburned methamphetamine, and neither the officer nor the chemist weighed the residue or testified that it was of a sufficient quantity to be useable in the manner in which the substance is ordinarily used. In *Harbison*, the supreme court wrote that "possession of less than a useable amount of a controlled substance is not what legislators have in mind when they criminalize possession because they cannot contribute to future conduct at which the legislation is aimed, that is, use of or trafficking in drugs." *Harbison*, 302 Ark. at 322–23, 790 S.W.2d at 151. We hold on this record that there was no substantial evidence to support a finding that Graham possessed a useable amount of methamphetamine, and we therefore reverse and dismiss her convictions for possession of methamphetamine and simultaneous possession of drugs and firearms.

## B. Chain of Custody

We next address Graham's argument that the evidence of the pipe tested at the crime lab, including the lab report, should not have been admitted into evidence because the State failed to establish a sufficient chain of custody. Because we are reversing and dismissing the possession-of-methamphetamine and simultaneous-possession-of-drugs-and-firearms convictions due to a lack of evidence, this argument applies only to Graham's remaining conviction for possession of drug paraphernalia. We agree with Graham's argument that a sufficient chain of custody was lacking under the proof presented.

9

Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be reversed absent and abuse of that discretion. *Gill v. State*, 2010 Ark. App. 524, 376 S.W.3d 529. The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Hawkins v. State*, 81 Ark. App. 479, 105 S.W.3d 397 (2003). Authentication requirements are satisfied if the trial court, in its discretion, concludes that the evidence presented is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant manner. *Raquel-Dieguez v. State*, 2015 Ark. App. 626, 475 S.W.3d 585. It is not necessary that the State eliminate every possibility of tampering. *Matlock v. State*, 2019 Ark. App. 470, 588 S.W.3d 152. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Hawkins*, *supra*. Proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive. *Duff v. State*, 2018 Ark. App. 112, 540 S.W.3d 738.

In support of her argument that there was an insufficient chain of custody, Graham cites *Rogers v. State*, 258 Ark. 314, 524 S.W.2d 227 (1975), which was a case where the supreme court affirmed the admission of evidence over a chain-of-custody challenge. Graham asserts that the facts of the present case are distinguishable from those in *Rogers* and that they fall short of establishing a proper chain of custody.

In *Rogers*, the supreme court wrote:

[I]t is insisted that the court erred in allowing the package of marihuana to be introduced in evidence, because a positive chain of possession was not established. We find no error. Officer Walters testified that after buying the marihuana on February 5 he took it to the Little Rock police headquarters and stored it in the narcotics safe. Before storing it he put his initials and the date on a piece of paper. He then put that piece of paper and the marihuana in a plastic bag, which he sealed with a heat-sealing machine. He explained that the machine 'wasn't working too proper at that time and I may have added a staple to it.' He also attached police department property tag No. 1101 to the bag, writing his initials on the tag. Two days later Officer Bullerwell took the package, bearing tag No. 1101, from the safe and delivered it to Don Wise, a chemist at the State Department of Health. Wise, after testing the substance and finding it to be marihuana, put the package in a vault, where it remained until he brought it to court on the day of trial. Wise identified the package as the one he received on February 7. Walters, Bullerwell, and Wise all testified.

. . . .

Despite some uncertainties in the State's testimony, the trial court properly admitted the package into evidence. Officer Walters testified that he put tag No. 1101 on the package, that he initialed it, and that the initialed tag was on the package when it was offered in evidence. The intervening chain of custody was established. Thus, there was prima facie showing of admissibility.

*Rogers*, 258 Ark. at 316–17, 524 S.W.2d at 228–29.

Turning to the present case, we hold that the trial court abused its discretion in admitting the lab report and the chemist's testimony concerning her testing of the meth pipe because the chain of custody of the meth pipe was not adequately established. In contrast to *Rogers*, *supra*, in this case Officer Fuller did not attach any identifying number to the envelope containing the pipe, nor did he initial the package. In fact, there was no testimony that there were any markings on the package at all. The last time Officer Fuller saw the package was on June 8, 2021, and it was not delivered to the crime lab until more than a month and a half later. Officer Fuller himself did not deliver the package to the crime lab,

stating that this was Investigator Pollack's responsibility. Investigator Pollack, however, did not testify. Crime-lab chemist Kim Brown testified that she tested a pipe that was packaged in a sealed box that had been placed inside an envelope. However, Ms. Brown did not testify where the envelope came from, and neither the envelope nor the pipe was introduced at trial. Given the proof presented, we conclude that the trial court abused its discretion because the State failed to establish that the evidence was authentic—that is—it failed to show within a reasonable probability that the pipe tested at the crime lab was the pipe that was seized from Graham some seven months earlier. Therefore, we hold that the lab report and related testimony concerning the testing of the meth pipe was erroneously admitted.

## C. Harmless Error

Although the trial court erred in admitting evidence of the pipe tested at the crime lab, for purposes of Graham's conviction for possession of drug paraphernalia, we conclude that this was harmless error. The supreme court has said that even when a trial court errs in admitting evidence, we will affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is slight. *Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007). To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence. *Id.* Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice by the defendant. *Id.* When the erroneously admitted evidence is merely cumulative, there is no prejudice, and a conviction will not be reversed for harmless error in the admission of evidence. *Id.*

Independent of the erroneously admitted evidence, there was overwhelming evidence of Graham's guilt on the charge of possession of drug paraphernalia. "Drug paraphernalia" includes any equipment, product, or material of any kind that is used or intended for use in ingesting, inhaling, or otherwise introducing into the human body a controlled substance. Ark. Code Ann. § 5-64-101(12)(A) (Supp. 2021). During Graham's encounter with Officer Fuller, Graham admitted that she was in possession of a meth pipe and showed it to him. Officer Fuller testified that he recognized the device as a meth pipe and stated that it appeared to contain residue of burned and unburned methamphetamine. Officer Fuller then proceeded to explain how the meth pipe is used to ingest methamphetamine. Graham's admission that she possessed a meth pipe combined with the physical evidence observed at the crime scene provided overwhelming evidence that she possessed drug paraphernalia. Therefore, the trial court's evidentiary error was harmless error with respect to that conviction, and we affirm Graham's conviction for possession of drug paraphernalia.

## III. *Conclusion*

In conclusion, we hold that there was insufficient evidence to support Graham's convictions for possession of methamphetamine and simultaneous possession of drugs and firearms. Therefore, those convictions are reversed and dismissed. We agree with Graham's argument that both the lab report and the chemist's testimony about her testing of the meth pipe were erroneously admitted because an adequate chain of custody was not established. Nevertheless, for the reasons stated herein, we hold that the erroneously admitted evidence was harmless error for purposes of Graham's remaining conviction for possession of drug

paraphernalia.  Therefore, Graham's conviction for possession of drug paraphernalia is affirmed.

Affirmed in part; reversed and dismissed in part.

VIRDEN and BARRETT, JJ., agree.

*Gibson Law Office*, by: *Chuck Gibson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.