Cite as 2025 Ark. App. 341

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-24-508

| | |
|---|---|
| GASPAR GASPAR-ANDRES<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered May 28, 2025<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26CR-21-157]<br><br>HONORABLE RALPH C. OHM, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

A Garland County Circuit Court jury convicted appellant Gaspar Gaspar-Andres ("Gaspar") of first-degree murder and hindering apprehension or prosecution and sentenced him to serve a thirty-year term of incarceration for the murder conviction and ten years for the hindering-apprehension conviction, to be served consecutively. On appeal, Gaspar challenges the admissibility of his custodial statement. He argues that his custodial statement was involuntarily made because he was interrogated despite requesting counsel, and the statement was the result of coercion; therefore, the circuit court erred in allowing the use of the statement even for impeachment purposes. We affirm.

On March 14, 2021, Miguel Ruiz was found deceased from multiple stab wounds in the bathroom of Pascual Gaspar-Andres's ("Paco's") residence. The next day, Paco's brother, Gaspar, voluntarily and unsolicited, presented himself to the Hot Springs Police Department to provide

information about Ruiz's murder. Gaspar gave a statement placing himself at the scene but did not implicate himself in the homicide. He stated that after a day of drinking, Paco, Ruiz, and others got into an altercation, which ended with Paco's killing Ruiz. He denied aiding Paco in the murder and claimed that while it took place, he was unconscious from a punch delivered by Paco. When he regained consciousness, Ruiz was dead, and he and Paco fled in Gaspar's truck. Following questioning, on the basis of Gaspar's statement and other investigative information, Gaspar and Paco were arrested and charged with first-degree murder.[1] Gaspar's criminal information was later amended to add a charge of hindering apprehension or prosecution.

On August 23, before trial, Gaspar moved to suppress the statement he provided to police on March 15. He alleged that the statement was taken in violation of his *Miranda* rights because it was not given intelligently, knowingly, or voluntarily. A hearing on the suppression motion was held on January 24, 2022, and continued on April 6. During the hearing, Gaspar argued that he "was not in a position to knowingly and intelligently waive his [Fifth Amendment] rights because he never understood them to begin with." He contended that he is not fluent in English; therefore, there was a language barrier that caused confusion concerning his right to speak to an attorney. Gaspar additionally asserted that the Spanish-speaking officer who explained the *Miranda* forms spoke a different dialect of Spanish, leading to translation mistakes.

Officers testified at the suppression hearing. Detective Mark Fallis testified that Gaspar, of his own will, presented himself to the police department the day after the murder. He stated that, initially, he believed Gaspar to be just a "family member" connected to the homicide. Initially, Gaspar

---

[1]Paco subsequently pleaded guilty.

2

communicated with him in English. When Gaspar started talking and Detective Fallis realized that Gaspar was one of the suspects in the case, he stopped the interview, left the room, obtained the *Miranda*-rights form, and then returned. Detective Fallis testified that Officer Richard Nunes, a Spanish-speaking officer, went over Gaspar's *Miranda* rights with him and used a Spanish-language *Miranda* form. Detective Fallis stated that, at times during the interview, Gaspar spoke English, "but it was broken." The majority of the interview was conducted in Spanish with Officer Nunes translating. Detective Fallis testified that there was no coercion and that it was made clear to Gaspar that he did not have to speak to officers unless he wanted to. He stated that toward the end of the interrogation, Officer Nunes informed him that Gaspar invoked his right to an attorney, and the interview ended.

Officer Nunes testified that Spanish is his first language and that he assisted in translating for Gaspar, a Spanish-speaking individual who came to the police department to give a statement about a murder case. Officer Nunes stated that Gaspar "spoke English and understood real good," but he was there just in case Gaspar did not understand some words. He stated that he explained to Gaspar in Spanish his *Miranda* rights and read him his rights word-for-word from a Spanish *Miranda* form. Officer Nunes testified that at the end of the interview, Gaspar asked for an attorney; the questioning immediately stopped; and Gaspar was placed in custody.

Officer Nunes testified that there was some confusion with the *Miranda* form "about wanting an attorney or not." Nunes, following Detective Fallis's instructions, explained to Gaspar that he could stop answering questions when he wanted an attorney. Officer Nunes stated that Gaspar then made "some modifications" to the *Miranda* form because he wanted to continue speaking to officers. He testified that during the interview, Gaspar never indicated that he was confused or lacked

understanding. Officer Nunes testified that other than at the end of the interview when questioning ceased, Gaspar did not invoke his *Miranda* rights. Officer Nunes stated that no promises or threats were made to Gaspar during the interview, nor was an aggressive tone employed.

In an order entered on May 5, the circuit court denied Gaspar's suppression motion, finding that his statement was made with full knowledge of his constitutional rights and that he waived those rights. The court ruled that because Gaspar intelligently, voluntarily, and knowingly gave his statement to police, the statement was admissible.

At the four-day jury trial, after the State rested, Gaspar elected to testify in his own defense. Although the State did not admit Gaspar's custodial statement as substantive evidence of guilt during its case-in-chief, on cross-examination, because of inconsistencies between his trial testimony and his custodial statement to police, the State requested permission to use portions of Gaspar's pretrial statement for impeachment purposes. Gaspar's counsel objected "to the extent that a portion of his statement — it's not fully fluent in English. His statement in Spanish is the one that's the most accurate." The circuit court overruled the objection. The State sought to impeach Gaspar's testimony and diminish his credibility with the prior inconsistent statement multiple times; no further objections were raised.

The jury found Gaspar guilty of the first-degree murder of Miguel Ruiz and hindering Paco's apprehension. The jury recommended consecutive sentences of thirty years' incarceration for murder and ten years for hindering apprehension. The circuit court sentenced Gaspar accordingly.

In this belated appeal, Gaspar contends that the court erred in finding that his custodial statement was admissible because he knowingly and intelligently waived his *Miranda* rights and that his statement to police was voluntarily given. He claims that he expressly requested an attorney and

4

did not waive his request, yet he was unconstitutionally subjected to further police interrogation. Gaspar asserts that because his statement was not voluntarily given, the circuit court erred in deeming it admissible.

First, we note that, although Gaspar asserts error in the circuit court's ruling regarding the admissibility of his custodial statement following the suppression hearing, the State did not admit it as substantive evidence of guilt. The statement's sole use was limited to the impeachment of Gaspar's trial testimony.

Even statements inadmissible against a defendant in the prosecution's case-in-chief because of the lack of procedural safeguards required by *Miranda v. Arizona*,[2] may, if trustworthiness satisfies legal standards, be used for impeachment purposes to attack the credibility of defendant's trial testimony.[3] Therefore, although Gaspar challenges the circuit court's finding that his custodial statement was made with the full knowledge and waiver of his constitutional rights, the argument is misplaced. Instead, the appropriate inquiry is whether Gaspar's custodial statement was voluntary.

A custodial statement may not be used for impeachment purposes if it was coerced.[4] The burden is on the State to show that a custodial statement was made voluntarily, intelligently, and without hope of reward or fear of punishment.[5]

---

[2] 384 U.S. 436 (1966).

[3] *Harris v. New York*, 401 U.S. 222 (1971).
[4] *Brooks v. State*, 308 Ark. 660, 827 S.W.2d 119 (1992) (citing *Mincey v. Arizona*, 437 U.S. 385 (1978)).

[5] *Jackson v. State*, 284 Ark. 478, 683 S.W.2d 606 (1985).

In support of his argument that the custodial statement was not given voluntarily, he asserts that it was not the product of his own free and deliberate choice. Gaspar alleges that the statement resulted from coercion. He states that statements made by the interrogating officers contributed to a sense of intimidation and coercion. As examples of the alleged coercive statements made by police, Gaspar points to accusations of lying and instructions to be strong and honest. He states that officers also reminded him that his parents in Guatemala depend on him.

Gaspar further alleged that he was handcuffed for part of the interview; he was not permitted to leave the room; he was questioned for more than three hours; and he was alone with two officers for most of the time. Gaspar argues that the isolated and unfamiliar environment was intimidating and conferred a psychological advantage to the officers.

Gaspar also argues that, while the *Miranda* form provided the option to request an attorney and he was told that he could ask for an attorney at any time, he was not provided with additional information about his constitutional rights. Last, Gaspar contends that his inability to fully comprehend English left him vulnerable to misunderstanding. He argues that given the totality of the circumstances, his custodial statement was the product of intimidation, coercion, and deception and not his free and deliberate choice; consequently, it was inadmissible for any purpose, including impeachment.

In response, the State contends that Gaspar's argument regarding involuntariness created by coercion, intimidation, and lack of free will is not preserved for appeal. We agree. Gaspar's motion to suppress and testimony elicited at the suppression hearing centered on whether he, despite any alleged language barrier, knowingly, intelligently, and voluntarily waived his right to counsel; he made no argument regarding coercion. Here, on appeal, for the first time, Gaspar argues that his

6

custodial statement was made as the result of police coercion and intimidation. Both arguments challenge the voluntariness of the statement; however, the motion to suppress concerned how or if Gaspar's broken English affected the voluntariness of his request for counsel or the waiver thereof. His argument here is much different—it focuses on confusion caused by coercion, rendering his statement involuntary.

Moreover, during trial, when the State sought to impeach Gaspar with his custodial statement, Gaspar failed to object on the grounds that he raises on appeal. Instead, his only objection was to the court's use of the English transcript, arguing that the Spanish translation of the transcript was most accurate. Again, Gaspar missed the opportunity to bring the issue of voluntariness based on coercive tactics to the circuit court's attention and obtain a ruling. A party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal.[6] It is the appellant's burden to obtain a clear ruling on an issue from the circuit court.[7] Because this argument was not fully developed or ruled on at the trial level, it is not preserved for appellate review.[8] Accordingly, we affirm Gaspar's convictions.

Affirmed.

HARRISON and WOOD, JJ., agree.

*D. Franklin Arey III*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.

---

[6]*Daniels v. State*, 2019 Ark. App. 507, 588 S.W.3d 407.

[7]*Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007).

[8]*See id.*